En el Tribunal Supremo de Puerto Rico

| Consejo de Titulares del Condominio Galerías Ponceñas<br><br>    Demandante-Recurrido<br><br>   .V<br><br>Galerías Ponceñas Incorporado<br><br>   Demandado-recurrente | Revisión<br><br>TSPR98-43 |
| --- | --- |

Número del Caso: RE-95-16

Abogados Parte Demandada-recurrente: Lic. Miguel Limeres Grau
Parra, Del Valle, Frau & Limeres

Abogados Parte Demandante-recurrida: Lic. Luis Muñiz Arguelles
Lic. Evelyn Benvenutti Toro

Abogados Parte Interventora:

Tribunal de Instancia: Superior, Sala de Ponce

Juez del Tribunal de Primera Instancia: Hon. Julio Alvarado Ginorio

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/16/1998

Materia:


Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

Consejo de Titulares del
Condominio Galerías
Ponceñas

    Demandante-Recurrido


    v.                  RE-95-16        Revisión


Galerías Ponceñas
Incorporado

    Demandado-Recurrente


Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


En San Juan, Puerto Rico, a 16 de abril de 1998.

El presente recurso nos permite resolver si un Presidente de la Junta de Directores de un edificio sujeto al régimen de propiedad horizontal necesita el consentimiento previo del Consejo de Titulares como condición para incoar una acción judicial en representación de dicho cuerpo. Además, nos permite expresarnos en relación a los remedios que posee una Junta de Directores de un condominio para evitar que un titular poseedor de más del cincuenta y un porciento de las participaciones en los elementos comunes del edificio pueda abrogarse un poder de veto en las deliberaciones que le afectan directamente y así impedir que se inicien procedimientos judiciales en su contra.

I.

El Condominio Galerías Ponceñas [en adelante el Condominio] consiste de un edificio de dos pisos sometido al régimen de propiedad horizontal mediante la escritura pública número 116 otorgada el 9 de noviembre de 1984 ante el notario Enrique A. Vicens. El primer piso está constituido por quince (15) locales dedicados a actividades comerciales. El segundo piso, por su parte, está identificado en la Escritura Matriz como "área privada abierta" y en la actualidad es utilizado en su totalidad como área de estacionamiento para vehículos. El mismo comprende un por ciento de participación equivalente al 57.652 por ciento del total de participaciones del edificio, de las cuales la recurrente Galerías Ponceñas Incorporado [en adelante Galerías Ponceñas] es la única titular. Ésta, además, es dueña de uno de los locales ubicados en el primer piso, cuya participación es de 4.019 por ciento del total de las participaciones, la que sumada a su participación en el segundo piso, equivale a un 61.671 por ciento del total de las participaciones en el Condominio.

En enero de 1993, el señor Juan Rivera Chévere, como Presidente de la Junta de Directores y en representación del Consejo de Titulares del Condominio Galerías Ponceñas [en adelante Consejo de Titulares], presentó tres demandas independientes contra Galerías Ponceñas. A cada demanda, el tribunal de instancia le asignó un número diferente.

En el caso Civil Número 93-0004, el Consejo de Titulares reclamó el pago de $120,204.42 que alegó le adeudaba Galerías Ponceñas por concepto de cuotas de mantenimiento atrasadas. El caso Civil Núm. 93-0013 consistió de una acción confesoria de servidumbre mediante la cual el Consejo de Titulares solicitó al tribunal que determinara que era titular de una servidumbre de paso sobre un predio de terreno que colinda por el área este del Condominio que pertenece a Galerías Ponceñas. Por último, en el caso Civil Núm. 93-0014, solicitó al tribunal que declarara nula la cláusula novena de la Escritura Matriz del Condominio, la cual reserva a

Galerías Ponceñas varios derechos sobre el edificio.[1] Oportunamente, el foro de instancia consolidó los recursos para todos los propósitos.

Galerías Ponceñas contestó las tres demandas en un sólo documento. En éste planteó como defensa afirmativa, entre otras, la incapacidad legal de Rivera Chévere para instar las reclamaciones judiciales ya que, a su juicio, no contaba con autorización alguna para ello por parte del Consejo de Titulares. Posteriormente, presentó una solicitud de sentencia sumaria en la que reafirmó esta alegación,[2] amparado en los Artículos I, II, III y V del Reglamento sobre Administración del Edificio.[3]

---

[1] La referida cláusula establece una reserva de derechos a favor de la recurrente, Galería Ponceñas, en cuanto a lo siguiente:

(A) El derecho de superficie y de espacio aéreo sobre el "CONDOMINIO GALERIAS PONCEÑAS", al igual que se reserva el derecho de uso de los cimientos y paredes maestras del edificio, troncales principales, (sic) para agua, electricidad, alcantarillado y todas aquellas facilidades necesarias para la construcción en el futuro de aquellas plantas adicionales sobre el edificio que le sea permitido a tenor con la Reglamentación de la Administración de Reglamentos y Permisos de Puerto Rico (ARPE) a tales efectos;

(B) El derecho de utilizar el corredor o pasillo en la planta baja así como la franja de terreno cubierta de cemento en la parte posterior del edificio, identificadas en el Plano de Inscripción como "Common Hallway" y "Rear Patio" respectivamente, para dar acceso a cualquier edificación que en el futuro le sea permitido construir por la Administración de Reglamentos y Permisos (ARPE);

(C) El derecho de construir un nuevo edificio o hacer mejoras en la franja de terreno cubierta de cemento en la planta baja del edificio, e identificada en el Plano de Inscripción como "Rear Patio", que en un futuro le sea permitido construir por la Administración de Reglamentos y Permisos (ARPE).

[2] Con ese fin, transcribió algunas de las respuestas dadas por Rivera Chévere a un interrogatorio que le había cursado. Específicamente, a la pregunta número 7 éste respondió lo siguiente: "El Consejo de Titulares no fue convocado a una reunión para discutir los hechos alegados en las demandas radicadas con los números JCD-93-0004; JAC-93-0013 y JAC-93-0014".

[3] Los referidos artículos establecen lo siguiente:
Art. I:
    Se adopta este Reglamento de conformidad con las disposiciones de la ley número ciento cuatro (104) de veinticinco de junio de mil novecientos cincuenta y ocho, según enmendada por la ley número ciento cincuenta y siete (157) de cuatro de junio de mil novecientos setenta y seis, ley de Propiedad Horizontal y quedará sujeto a todas las disposiciones de dichas leyes [...].

Art. II:

Ante este cuadro, la Junta de Directores convocó una reunión del Consejo de Titulares el 27 de agosto de 1993 con el objetivo de que los condóminos ratificaran la presentación de las demandas. En ella, Galerías Ponceñas estuvo debidamente representada. Sin embargo, según alega, Rivera Chévere le impidió ejercer la totalidad de los votos a los que tenía derecho según su participación en el condominio, ya que tan sólo le permitiría votar por su participación correspondiente al local ubicado en el primer piso, en relación al cual la Junta de Directores estimaba no había deuda alguna pendiente.

Luego de oponerse a este curso de acción, el representante de Galerías Ponceñas abandonó la reunión. Surge del expediente que los condóminos presentes en esa ocasión ratificaron la actuación del Presidente de la Junta de Directores.

Posteriormente, Galerías Ponceñas presentó en el Tribunal de Primera Instancia una demanda en la que impugnó las decisiones tomadas en la asamblea del 27 de agosto de 1993 bajo el fundamento de que, al tomar los acuerdos, la Junta no cumplió con el criterio de mayoría para su adopción según lo establece el Reglamento de Administración del Edificio. Al respecto, adujo que posee una participación como dueño de área privada equivalente al 61.671 por ciento de la superficie del Condominio y que al no participar en la reunión, la suma de las participaciones

---

Todos los dueños de los locales comerciales o áreas privadas o existentes actualmente en dicha propiedad o que advinieran dueños en el futuro, arrendatarios, futuros arrendatarios, o sus empleados y cualquier otra persona que residan [sic] en ellos o los utilicen quedan sujetos y obligados por este Reglamento [...].

Art. III:
Los titulares de los locales comerciales o áreas privadas constituirán la junta de Administración a la cual corresponderá tomar acuerdos pertinentes a la administración del edificio, tales como fijación del presupuesto de gastos [...].

Art. V:
Los acuerdos de la Junta de Administración se adoptarán por mayoría, esto es, con el voto de por lo menos la mitad más uno de los titulares cuyos locales comerciales o áreas privadas a su vez representen el cincuenta y un por ciento de participación en los elementos comunes [...].

correspondientes a los presentes sólo alcanzaba el 38.33 por ciento de participación en la totalidad del condominio, lo que, a su juicio, no configuraba la mayoría requerida para que los acuerdos tomados fueran válidos.

Ambas partes solicitaron al tribunal que emitiera sentencia sumaria a su favor: Galerías Ponceñas en cuanto a su demanda de impugnación y el Consejo de Titulares en cuanto a las restantes reclamaciones. Así las cosas, el Tribunal de instancia emitió por separado una resolución y dos sentencias parciales. En la resolución determinó que procedía consolidar la demanda de impugnación con la reclamación de cobro de dinero ya que, a su juicio, para adjudicar ambas controversias debía determinar si Galerías Ponceñas estaba obligada a pagar el 57.652 por ciento, por concepto de su participación en el segundo piso del edificio, de la suma de $36,000.00 anuales fijada por el Consejo de Titulares para el pago del mantenimiento de áreas comunes. Además, en esta resolución expresó que era necesaria la presentación de prueba testifical para hacer las determinaciones de hechos correspondientes. En vista de ello, el foro de instancia declaró no ha lugar la solicitud de las partes en cuanto a estas dos reclamaciones.

Por su parte, en las sentencias parciales, dicho foro consideró de forma separada las reclamaciones restantes. En cuanto a la acción confesoria de servidumbre determinó que conforme surgía de los documentos presentados por las partes, el Consejo de Titulares había demostrado que en efecto se había constituido una servidumbre de paso a su favor en el predio de terreno perteneciente a Galerías Ponceñas.[4] En la otra

---

[4] Es preciso destacar que en la sentencia en la que fue adjudicada la acción confesoria de servidumbre, el Tribunal de instancia hizo referencia a una previa resolución en la que otro magistrado había declarado no ha lugar una solicitud de sentencia sumaria de Galerías Ponceñas amparada en la incapacidad legal del Presidente de la Junta de Directores del Condominio para instar la reclamación. Véase, Apéndice de la Petición de Certiorari, a la pág. 91. La resolución aludida concluyó que el planteamiento de Galerías Ponceñas era inmeritorio porque el Consejo de Titulares del Condominio ratificó la gestión de su Presidente en la asamblea realizada el 27 de agosto de 1993.

Advertimos que en esta resolución, el tribunal de instancia adjudicó

sentencia, adjudicó sumariamente la reclamación a favor del Consejo de Titulares, por lo que declaró nula la cláusula novena de la Escritura Matriz del Condominio.[5]

Denegada una solicitud de reconsideración, Galerías Ponceñas acudió ante nos para que examinemos ambas sentencias parciales. En su escrito plantea que "[h]abiendo concluído [sic] el Tribunal de Primera Instancia que existía una controversia real en relación con la existencia o no de la deuda en la cuota de mantenimiento, ello tiene el efecto de afectar directamente las demás demandas radicadas [...]". Petición de Revisión, a la pág. 4. Al respecto, plantea como único error que:

> Erró el Tribunal Recurrido al resolver que hay una controversia real sobre la existencia o no de deuda de pago de cuota de mantenimiento y dicta sentencia sumaria a favor del recurrido cuya capacidad legal para demandar ha sido impugnada y está sujeta a que se determine si existe o no deuda para justificar negarle el derecho a votar en la junta de Condómines [sic] a lo recurrentes.

Oportunamente, ordenamos al Secretario de este Tribunal que expidiera el correspondiente mandamiento de revisión dirigido al tribunal a quo. Eventualmente, las partes presentaron sus alegatos. Resolvemos.

---

sólo el planteamiento de la alegada incapacidad legal del señor Rivera Chévere para instar las reclamaciones iniciales contra Galerías Ponceñas, aspecto que fue traído por ésta mediante moción de sentencia sumaria. Esta resolución no adjudicó el planteamiento de Galerías Ponceñas, señalado en la demanda de impugnación presentada el 10 de octubre de 1993, en términos de que los acuerdos tomados en la reunión del 27 de agosto no eran válidos, por la reunión no haber cumplido con el criterio de mayoría que establece el reglamento del Condominio. Esta controversia fue la que el foro de instancia señaló que ameritaba ser considerada de forma consolidada con la reclamación en cobro de dinero y que aún resta por resolver.

[5] Debemos aclarar que las sentencias recurridas no se denominan sentencias parciales. Sin embargo, queda claro que el foro de instancia consolidó las tres reclamaciones instadas por el Consejo de Titulares. De este modo, cualquier adjudicación final de cualesquiera de estas reclamaciones constituiría una sentencia parcial, cuya finalidad estaba sujeta a que se cumpliera con lo dispuesto en la Regla 43.5 de las de Procedimiento Civil. En este extremo, el juez de instancia debía concluir expresamente que no existía razón alguna que impidiera adjudicar de forma final la reclamación, y ordenar expresamente la notificación de la sentencia parcial. Hemos examinado detenidamente las sentencias parciales recurridas. Aunque en ellas el juez de instancia omitió expresar que no había razón alguna que impidiera la adjudicación de forma final de ambas reclamaciones, esta omisión, aunque incide sobre la finalidad de ambas sentencias parciales, no altera la jurisdicción que posee este Tribunal sobre el recurso. Véase, Asociación de Propietarios v. Santa Bárbara Co., 112 D.P.R. 33 (1982).

II.

En síntesis, Galerías Ponceñas alega que la ratificación de la presentación de las tres reclamaciones en su contra efectuada en la asamblea de condóminos del 27 de agosto de 1993 no fue realizada de acuerdo al Reglamento de Administración del Edificio que requiere que los acuerdos del Consejo sean aprobados mediante el voto de una mayoría de los condóminos, esto es, mediante "el voto de por lo menos la mitad más uno de los titulares cuyos locales comerciales o áreas privadas a su vez representen el cincuenta y un por ciento de participación en los elementos comunes [...]". Reglamento de Administración del Edificio, Art. V.

Señala que al abandonar dicha reunión, y ya que posee un 61 por ciento de las participaciones de los elementos comunes del edificio, el total de participaciones correspondientes a los titulares presentes en la asamblea era menor al 50 por ciento <u>del total de las participaciones del edificio</u>. Por ello, afirma que cualquier acuerdo allí tomado es nulo ya que las decisiones no cumplieron con el criterio de mayoría adoptado en el Reglamento de Administración del Edificio.

A la luz de lo anterior, ante nos aduce que ya que la causa para su exclusión de la reunión fue la alegada deuda por concepto de cuotas de mantenimiento, aspecto, que según el foro de instancia está en controversia y "requiere el desfile de prueba testifical", era improcedente adjudicar mediante sentencia sumaria las demás reclamaciones en su contra. Afirma que en la eventualidad de que se determinara que su exclusión de la reunión de ratificación fue infundada, todos los acuerdos allí tomados, incluyendo el propio acuerdo de ratificación de los procedimientos judiciales, carecerían de validez. Como resultado de lo anterior, su planteamiento de incapacidad legal de Rivera Chévere para demandarla, prevalecería. Al respecto señala:

> asumamos que luego de escuchar la prueba el Tribunal de Primera Instancia concluye que efectivamente para agosto de 1993, Galerías Ponceñas, Inc. tenía derecho a votar en dicha reunión con su participación de 61% de la superficie de la totalidad de

los condominios y el negarle dicho derecho al voto fue contrario, a lo establecido por el Reglamento y la Ley.

Esa conclusión, a su vez tendría el efecto de anular todas las decisiones tomadas por la junta de Condómines [sic] en agosto de 1993, entre las cuales estaba la ratificación de las demandas radicadas en el Tribunal Superior de Puerto Rico, Sala de Ponce, [...], ya que la mayoría de los condómines [sic] del Condominio Galerías Ponceñas no habrían autorizado la radicación de todas estas demandas.

A juicio de Galerías Ponceñas, en buena práctica judicial adjudicativa, el foro recurrido debió resolver previamente su demanda de impugnación y la controversia de hechos que ese foro alegó que existía en cuanto a la deuda, para determinar si su exclusión del proceso de votación en cuanto a la participación que adeudaba según la Junta, fue correctamente efectuada.

De entrada es preciso aclarar que aunque Galerías Ponceñas parece entender que ante nos tan sólo ha planteado un asunto meramente procesal, queda patente que toda su argumentación parte del supuesto de que, conforme al ordenamiento jurídico que rige en materia de propiedad horizontal, un Presidente o funcionario de la Junta de Directores de un edificio sometido a este régimen está obligado a obtener el consentimiento de los titulares del condominio como condición previa para utilizar el cauce judicial en nombre del Consejo de Titulares. Atendamos esta interrogante.

III.

La Ley de Propiedad Horizontal, Ley Núm. 104 del 23 de junio de 1958, según enmendada por la Ley Núm. 157 de 4 de junio de 1976, 31 L.P.R.A. secs. 1291 et seq., establece un esquema de manejo y administración de los edificios organizados a su amparo en el cual el Consejo de Titulares es el "organismo supremo del régimen con personalidad jurídica". Alvarez Figueredo v. González Lamela, Opinión y Sentencia de 14 de julio de 1995, 138 D.P.R. ___ (1995). Constituye el cuerpo deliberativo y normativo encargado de tomar las decisiones de trascendencia para los condóminos.

Distinto al Consejo de Titulares, el Director o la Junta de Directores, según sea el caso, constituye "el órgano ejecutivo de la comunidad de titulares". Art. 38-D, 31 L.P.R.A. sec. 1293b-4. Su función básica es dirigir y supervisar "la gestión administrativa del edificio de acuerdo a las directrices contenidas en la escritura, en el Reglamento y en los acuerdos del Consejo de Titulares". Michel J. Godreau, El condominio; el régimen de propiedad horizontal en Puerto Rico 111 (1992). Es preciso advertir, sin embargo, que "[t]odas sus decisiones, e incluso el propio cargo como director, están sujetos a la voluntad del Consejo de Titulares". Id.

Como puede apreciarse, en el esquema creado por la Ley de Propiedad Horizontal el Consejo de Titulares y la Junta de Directores son organismos distintos. De entre éstos, la personalidad jurídica la ostenta el Consejo de Titulares, no la Junta de Directores. Arce Preston v. Caribbean Home Construction Corp., 108 D.P.R. 225 (1978). Esta personalidad jurídica capacita al Consejo de Titulares para instar acciones ante los tribunales dentro del ámbito de las atribuciones que la Ley le confiere. En este contexto, "[l]a parte actora del colectivo será siempre el Consejo de Titulares, representado por quien la Ley faculte para hacerlo". Michel J. Godreau, Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la junta de directores y del Presidente para llevar acciones a nombre del condominio, 64 Rev. Jur. U.P.R. 481, 485 (1995), [en adelante Michel J. Godreau, Personalidad jurídica].

Queda claro, sin embargo, que la personalidad jurídica que ostenta el Consejo de Titulares y que lo capacita para instar procedimientos judiciales en su nombre no le otorga la facultad de demandar ni lo convierte en demandado en cualquier tipo de procedimiento en el que esté involucrado un titular del Condominio o algún asunto que pueda tener relación con éste. Como en toda acción presentada por una persona o entidad con personalidad jurídica, para que el Consejo de Titulares pueda comparecer ante los tribunales como entidad es preciso que esté

legitimado para ello, ya sea porque la propia Ley de Propiedad Horizontal, como fuente primaria de legitimación, así lo disponga, o porque se satisfacen los criterios jurídicos que al respecto hemos establecido. Noriega Rodríguez v. Hernández Colón, Opinión y Sentencia de 18 de marzo de 1994, 135 D.P.R. ___ (1994); Hernández Torres v. Hernández Colón, Opinión y Sentencia de 31 de enero de 1992, 129 D.P.R. ___ (1992); Colegio de Ópticos v. Vani Visual Center, 124 D.P.R. 559 (1989). Sin embargo, la legitimación del organismo, si bien es condición necesaria para acudir ante los tribunales, no resuelve la controversia en relación a si la Junta de Directores del Condominio o su Presidente necesitan obtener el consentimiento previo del Consejo de Titulares para acudir a los tribunales en representación de éste.

La Ley de Propiedad Horizontal nada dispone sobre este aspecto.[6] Tan sólo expresa que: "[e]l Presidente [de la Junta de Directores] representará en juicio y fuera de él a la comunidad en los asuntos que la afecten [...]". Art. 38; 31 L.P.R.A. sec. 1293b (a)(1).

En Condominio Profesional San Juan Health Centre v. P.R.F. Inc., Opinión y Sentencia de 27 de mayo de 1993, 133 D.P.R. ___ (1993), consideramos una controversia similar a la que nos ocupa. Allí, al considerar la impugnación judicial de cierta reserva de derechos establecida en la Escritura Matriz del Condominio Professional San Juan Health Centre a favor del desarrollador del edificio, indicamos que, al instar la reclamación, el Presidente de la Junta de Directores del Condominio actuó en nombre del Consejo de Titulares. Indicamos que el hecho de que uno de los titulares no estuviera de acuerdo con el curso de acción judicial tomado por la Junta de Directores en nombre del Consejo de Titulares no equivalía a que la acción judicial no hubiese sido instada por el Consejo de Titulares por conducto del Presidente de la

---

[6] Debemos advertir que no estamos considerando la facultad de alguno de los condóminos de instar procesos judiciales en su carácter personal. Tan sólo consideramos la validez de acudir al foro judicial por parte del Director o de la Junta de Directores a través de su Presidente, en representación del Consejo de Titulares de un condominio.

Junta. Expresamos, además, que la personalidad jurídica que ostenta el Consejo de Titulares lo capacita para "ejercer sus derechos, tomar ciertas determinaciones y a incurrir en obligaciones, incluso por encima de la voluntad individual de una minoría de sus miembros, siempre y cuando actúe conforme a la Ley y dentro del ámbito de sus finalidades". Id. Véase además, Consejo de Titulares v. Vargas, 101 D.P.R. 579, 587 (1973).

Luego de analizar las disposiciones de la Ley de Propiedad Horizontal, concluimos que las atribuciones conferidas por ley a la Junta de Directores,

> necesariamente implican la facultad para acudir a los tribunales en representación de la comunidad de titulares con el fin de exigir el cumplimiento de las disposiciones de la Ley de Propiedad Horizontal respecto a asuntos que afectan a aquella y en relación a los cuales la misma decide actuar conforme la capacidad jurídica que se le reconoce para ello. San Juan Health Centre v. P.R.F., Inc., supra, (énfasis suplido).

Más tarde, en Junta de Directores del Condominio Montebello v. Fernández, Opinión y Sentencia de 31 de mayo de 1994, 136 D.P.R. ___ (1994), consideramos si era válida la acción de una Junta de Directores de un condominio de acudir a los tribunales para solicitar que se pusiera en vigor una orden administrativa del D.A.C.O.. Al responder esta pregunta en la afirmativa, señalamos que la Ley de Propiedad Horizontal le conferían a la Junta de Directores la facultad de velar por el cumplimiento de las normas relativas a los elementos comunes generales del inmueble, y expresamente la autorizaban a cumplir y hacer cumplir las disposiciones de la propia Ley de Propiedad Horizontal y del Reglamento del edificio. En vista de ello, expresamos que tales deberes podían "razonablemente interpretarse como una autorización a recurrir a los tribunales". Aunque en esa ocasión fue el cuerpo directivo del Consejo de Titulares quien tramitó el pleito judicial, la parte realmente concernida lo era el Consejo de Titulares, único órgano que posee personalidad jurídica y que en esa ocasión estaba legitimado para comparecer ante los tribunales. No obstante, en los casos anteriores no

nos expresamos en términos de si un Presidente de una Junta de Directores o en su defecto, el Director Ejecutivo, debe obtener el consentimiento previo de los condóminos para poder acudir al foro judicial en representación del Consejo de Titulares.

El profesor Michel Godreau se ha expresado sobre el tema que nos ocupa. A su juicio, requerirle a un Presidente de una Junta de Directores una previa aprobación del Consejo de Titulares para instar un proceso judicial debe depender del tipo de acción judicial de que se trate. Michel J. Godreau, Personalidad jurídica, supra, a la pág. 495. Afirma que aunque la mejor práctica sería obtener el previo consentimiento del Consejo de Titulares para incoar una acción, pueden surgir instancias en las cuales es preciso acudir a los tribunales con premura, por lo que resulta enteramente razonable acudir al cauce judicial sin notificarlo a los condóminos. No obstante, aconseja que en tales casos "la Junta o el Presidente deben actuar de acuerdo a las normas de razonabilidad y de sana administración y decidir el curso a seguir, procurando notificar al Consejo con la premura que el caso amerite". Id. Asimismo afirma que "[e]n todo caso [...] el Presidente o la Junta, en su caso, deben procurar que el Consejo de Titulares ratifique su gestión". Id.

En este contexto, y ante las múltiples y diversas situaciones que pueden surgir en el manejo de los asuntos de un edificio sometido al régimen de propiedad horizontal, Godreau plantea la siguiente alternativa:

> la mejor viabilización de los intereses del Régimen de Propiedad Horizontal se logra estableciendo una presunción iuris tantum de que la Junta o el Presidente del Condominio están autorizados por el Consejo de Titulares cuando incoan la acción a nombre del Consejo o cuando comparecen en defensa de éste. Como presunción rebatible debe estar sujeta a impugnación. Adviértase que esta presunción no derrota la necesidad de que el Presidente o la Junta obtengan el consentimiento del Consejo. Decir que la autorización es necesaria no significa que la acreditación de la misma constituya condición sine qua non para que el Presidente o la Junta puedan comparecer ante un tribunal. La función de la presunción es en realidad la de facilitar las relaciones del Consejo frente a terceros. Sólo en los casos que la otra parte en la controversia cuestione con fundamentos la ausencia de

autorización consideraríamos necesario acreditar la misma. <u>Id.</u> a la pág. 496 (énfasis suplido) (notas al calce omitidas).

Reconocemos que esta alternativa podría salvaguardar el poder del Consejo de Titulares, como organismo supremo del régimen, frente a la posibilidad de actuaciones de la Junta de Directores que no sean refrendadas por la mayoría de los titulares. Sin embargo, estimamos que una lectura del texto de la ley revela que la facultad del Presidente de la Junta de Directores de acudir a los tribunales sin el consentimiento previo del Consejo de Titulares está razonablemente implícito, al menos, en aquellas facultades que la ley <u>le delega de forma expresa</u>.

El artículo 38-D de la Ley de Propiedad Horizontal establece los deberes y facultades del organismo ejecutivo de un condominio, ya sea un Director o una Junta de Directores. Un análisis de estas facultades y deberes revela que en algunas de ellas el legislador claramente señaló que su cumplimiento efectivo requería la participación del Consejo de Titulares. Véase Art. 38-D, incisos (b), (f) y (g), 31 L.P.R.A. sec. 1293b-4 (b), (f) y (g). En otras, el legislador no hizo tal salvedad. Así por ejemplo, la facultad de cobrar a los titulares las cuotas con las que deben contribuir a los gastos comunes, constituye una facultad conferida de forma expresa por el legislador al Director o a la Junta de Directores que no fue condicionada a la intervención oportuna del Consejo de Titulares.[7]

Tal distinción se fundamenta en la naturaleza de la facultad conferida y en virtud de la agilidad que la Legislatura pretendió conferirle a la Junta de Directores en el descargo de los deberes impuestos. Por ello, y dada la regularidad con la que tales facultades deben realizarse, resulta perfectamente entendible que para ejercerlas no se requiera una previa intervención del Consejo de Titulares.

---

[7] El Art. 38-D(d) establece que será facultad del Director, o en su defecto, de la Junta de Directores: "Cobrar a los titulares las cantidades con que deben contribuir a los gastos comunes y realizar los demás cobros y pagos que sean necesarios, extendiendo los correspondientes recibos y cheques". 31 L.P.R.A. sec. 1293b-4(d).

De igual forma, las múltiples situaciones que pueden surgir como parte de la administración de un edificio sujeto al régimen de propiedad horizontal requiere que de ordinario la Junta de Directores tenga a su disposición aquellos mecanismos que viabilicen el cabal cumplimiento de sus deberes. Acudir al foro judicial para lograr el efectivo ejercicio de las facultades conferidas expresamente por ley y cuyo ejercicio no está condicionado por el estatuto a la intervención del Consejo de Titulares, evidentemente es uno de esos mecanismos. En vista de lo anterior, resolvemos que el Director, o en su defecto el Presidente de la Junta de Directores, no necesita obtener el consentimiento del Consejo de Titulares para acudir a los tribunales con el propósito de lograr el efectivo cumplimiento de las facultades que la Ley de Propiedad Horizontal le confiere de forma expresa y cuyo cumplimiento no fue condicionado por la Asamblea Legislativa a intervención alguna del Consejo de Titulares. En este tipo de acciones, el Director o el Presidente de la Junta de Directores no necesitan la intervención oportuna del Consejo de Titulares para que su gestión sea válida, siempre que la Junta lo autorice.

La norma que hoy establecemos es claramente consecuente con el principio de interpretación legislativa "que exige que los estatutos se interpreten tomando en consideración los fines que persiguen y la política pública que los inspira". Alvarez Figueredo v. González Lamela, supra; véase además, Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991). Sin embargo, un aspecto debe quedar claro. Como norma general, la presentación de una reclamación judicial en nombre del Consejo de Titulares conlleva gastos para el patrimonio de este organismo. Asimismo, pudiera ser que determinada gestión judicial que sea realizada como parte inherente del ejercicio de las facultades conferidas de forma expresa por ley, y que a juicio de la Junta de Directores amerita incurrir en los gastos que el litigio conlleva, no sea refrendada por la mayoría de los condóminos. Por ello, lo resuelto hoy por este Tribunal no excluye el deber del Director y la Junta de Directores, según sea el

caso, de informar a los condóminos dentro de un período de tiempo razonable de la acción seguida.

Tampoco infringe el poder del Consejo de Titulares en los asuntos que le conciernen. Como cuerpo deliberativo supremo dentro del régimen de la horizontalidad, la determinación de acudir a los tribunales por parte del Director o del Presidente de la Junta de Directores para hacer efectivas las facultades que la Ley de Propiedad Horizontal les confiere expresamente no es absoluta. La misma queda siempre sujeta a la voluntad del Consejo de Titulares, organismo que conserva el poder de utilizar aquellos mecanismos que la propia Ley de Propiedad Horizontal y nuestro ordenamiento jurídico les confiere para alterar el curso de acción seguido por el cuerpo directivo.

Por otro lado, en las instancias en las que el Presidente de la Junta de Directores considere apropiado acudir a los tribunales en representación del Consejo de Titulares en relación a asuntos que la Ley de Propiedad Horizontal no le ha delegado de forma expresa, estimamos prudente la intervención oportuna del Consejo de Titulares. No obstante, dada la diversidad de situaciones que pudieran ameritar recurrir al cauce judicial para proteger los intereses del Consejo de Titulares, así como la premura con la que en ocasiones se debe actuar, estimamos viable canalizar la necesidad de esta intervención adoptando la propuesta del profesor Godreau. En este sentido, en los casos en que la gestión judicial no es realizada como consecuencia del ejercicio de facultades o deberes impuestos de forma expresa al Presidente o a la Junta de Directores, operará una presunción rebatible a favor del Presidente de la Junta de Directores en términos de que se encuentra autorizado para acudir a los tribunales en representación del Consejo de Titulares. Si la parte adversa logra controvertir tal presunción con fundamentos, compete al Presidente o a la Junta de Directores demostrar al Tribunal que posee la autorización necesaria en este tipo de acciones, ya sea demostrando que el Consejo de Titulares prestó previamente su consentimiento, u obteniendo la ratificación de su actuación dentro de un

período de tiempo razonable. Véase, Regla 15.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 15.1; véase además, Ríos Rosario v. Vidal Ramos, Opinión y Sentencia de 30 de junio de 1993; 134 D.P.R. ___ (1993). De esta forma, se brinda flexibilidad a la gestión directiva del cuerpo administrativo de los condominios, a la vez que se minimiza la posibilidad de actuaciones arbitrarias de su parte.

Ahora bien, a la luz de todo lo anterior ¿estaba facultado el presidente de la Junta para instar las acciones que son objeto de revisión y que el tribunal de instancia adjudicó mediante sentencia sumaria? Examinemos las reclamaciones que fueron adjudicadas sumariamente y que son objeto del presente recurso.

## IV.

En la acción confesoria de servidumbre el Consejo de Titulares reclamó la constitución de una servidumbre de paso en un predio de terreno colindante con el Condominio y que pertenece a Galerías Ponceñas. Se trata de un predio de terreno que no forma parte del Condominio.

Según lo antes resuelto, el Presidente de la Junta de Directores posee facultad para acudir al cauce judicial para cumplir con aquellas facultades y deberes que la Ley de Propiedad Horizontal o el Reglamento de Administración del Edificio le han conferido expresamente. La acción confesoria de servidumbre no es enmarcable dentro del alguna de estas facultades. No nos parece que sea una gestión meramente administrativa o de buen gobierno. Véase Art. 38-D(a), 31 L.P.R.A. sec. 1293b-4(a). Tampoco parece ser una medida requerida para la conservación del inmueble, aunque de serlo, el texto del Art. 38-D(g), sugiere que se requiere la intervención del Consejo de Titulares.[8]

Por otro lado, de los autos tampoco surge que tal facultad le haya sido conferida a la Junta por el Consejo de Titulares en su Reglamento de

---

[8] El referido artículo dispone que será deber del Director o de la Junta de Directores: "Atender a la conservación del inmueble y disponer de las reparaciones ordinarias y en cuanto a las extraordinarias, adoptar las medidas necesarias dando inmediata cuenta al Consejo". 31 L.P.R.A. sec. 1293b-4(g).

Administración. En vista de ello, estimamos que la presentación de la acción confesoria de servidumbre requería la intervención oportuna del Consejo de Titulares.

En el caso de autos, no medió una previa intervención de ese organismo. No obstante, al acudir a los tribunales, y ser cuestionada la capacidad del Presidente para así obrar, correspondía a éste demostrar al tribunal que el Consejo de Titulares refrendaba ese proceder. Una de los medios que tenía a su disposición para ello era obteniendo la ratificación de su actuación por parte del Consejo de Titulares.

Esta parece ser la situación ocurrida en el caso de autos. Una vez Galerías Ponceñas planteó como defensa afirmativa la incapacidad legal del Presidente de la Junta de Directores para instar la reclamación, fue convocada una asamblea de condóminos para la ratificación de la gestión del Presidente de la Junta. No obstante, los acuerdos tomados en esa asamblea fueron impugnados por Galerías Ponceñas y hasta el momento dicha impugnación no ha sido adjudicada por el foro de instancia. Por ello, y ante el hecho de que la acción confesoria de servidumbre no puede ser concebida como parte del ejercicio de facultades expresamente conferidas por ley al Presidente o a la Junta de Directores, estimamos que en buena práctica judicial el foro de instancia debió considerar inicialmente la controversia sobre la facultad que tenía el Presidente de la Junta para instar esa reclamación, y una vez evaluada tal facultad, debía proceder a adjudicarla.

No tenemos ante nos copia del acta de la asamblea del 27 de agosto de 1993 en donde se detallan los acuerdos tomados por el Consejo de Titulares. Tampoco tenemos el expediente de los casos pendientes ante el foro de instancia de forma que podamos evaluar cabalmente la procedencia de los planteamientos de Galerías Ponceñas. En vista de ello, corresponde revocar esta sentencia y devolver el caso al tribunal de instancia para que luego de adjudicar la demanda de impugnación, ese foro resuelva la procedencia de la acción confesoria de servidumbre. Véase, Alvarez Figueredo v. González Lamela, supra, (en donde devolvimos el caso

al foro de instancia para determinar si un acuerdo de sobreelevación había sido adoptado por unanimidad).

La sentencia sumaria parcial en la que el foro de instancia resolvió que la cláusula novena de la Escritura Matriz del Condominio es nula, requiere hacer el mismo análisis.

V.

La Ley de Propiedad Horizontal establece que los acuerdos del Consejo de Titulares estarán subordinados a la propia Ley de Propiedad Horizontal, a las disposiciones del Reglamento de Administración que adopte y a lo preceptuado en la Escritura Matriz. La Escritura Matriz constituye, así, una de las fuentes que rigen la conducta del Consejo de Titulares y cuyas disposiciones viene obligado a obedecer. El sitial preferente de la Escritura Matriz dentro del régimen de la horizontalidad también queda manifestado en la Ley de Propiedad Horizontal al ésta establecer que cualquier alteración al uso de un apartamento, según fijado en ella, tan sólo podrá ser efectuada mediando el voto unánime del Consejo de Titulares. Art. 2, 31 L.P.R.A. sec. 1291.[9] Por lo anterior, de ordinario constituiría un contrasentido que se le reconociera a la Junta de Directores la facultad de acudir a los tribunales para solicitar un remedio que tenga el efecto de enmendar el Reglamento de Administración o la Escritura Matriz sin el consentimiento del Consejo de Titulares, único cuerpo con capacidad en ley para alterarlos. Más aún, cuando una acción de esta naturaleza es instada para cuestionar de forma específica el Reglamento de Administración o la Escritura Matriz, cuyas disposiciones la Ley de Propiedad Horizontal impone al Presidente el deber de cumplir y hacer cumplir. Véase, Michel J. Godreau, Capacidad Legal, supra, a la pág. 497.

---

[9] El Art. 2 de la Ley de Propiedad horizontal fue enmendado por la Ley Núm. 153 de 11 de agosto de 1995, la cual, entre otras cosas, alteró este requisito para sólo requerir el voto de por lo menos 75 por ciento de los titulares que a su vez representen el 75 por ciento de los elementos comunes. Sin embargo, esta ley fue derogada por la Ley Núm. 43 de 21 de mayo de 1996, lo que tuvo el efecto de restablecer el estado de derecho anterior, y por ende, de restablecer el requisito de unanimidad para realizar la referida alteración.

Sin embargo, estas fuentes del régimen de propiedad horizontal no tienen la misma jerarquía entre sí. De entre ellas, la Ley de Propiedad Horizontal posee primacía, por lo que cualquier disposición claramente contraria a sus disposiciones que contenga la Escritura Matriz o el Reglamento de Administración sería nula. Por tal razón, cuando la Ley de Propiedad Horizontal impone a la Junta de Directores el deber de "[c]umplir y hacer cumplir las disposiciones de esta ley, del reglamento y los acuerdos del Consejo de Titulares", Art. 38-D(i), 31 L.P.R.A. sec. 1293b-4(i), le impone a ese cuerpo directivo la expresa obligación de velar porque aún las disposiciones de la Escritura Matriz y del Reglamento de Administración sean consecuentes con la Ley de Propiedad Horizontal.

De este claro deber impuesto sobre la Junta de Directores se deriva la facultad que ese organismo y su Presidente poseen para acudir a los tribunales para vindicar lo preceptuado en la Ley de Propiedad Horizontal. Estimamos que para así obrar, el Presidente de la Junta de Directores del Condominio Galerías Ponceñas no requería el consentimiento previo del Consejo de Titulares. Por ello, no erró el foro de instancia al adjudicar sumariamente la acción de nulidad de la cláusula de la Escritura Matriz en disputa, sin previamente resolver la demanda de impugnación instada por la corporación Galerías Ponceñas. Tal adjudicación no era necesaria para resolver sumariamente este caso, ya que el Presidente de la Junta de Directores del Condominio podía acudir al tribunal en representación del Consejo de Titulares para instar una acción en donde "se cuestiona[ba] la validez de una cláusula de la escritura matriz, que se alega[ba] viola[ba] precisamente la Ley de Propiedad Horizontal". Condominio Profesional San Juan Health Centre v. P.R.F. Inc., supra.

La eventual reunión realizada por el Consejo de Titulares en la que se discutió la presentación de la demanda, constituyó notificación adecuada a los condóminos sobre la acción judicial tomada por la Junta de Directores. No surge de los autos, que alguno de los miembros, con

excepción del representante de Galerías Ponceñas, se opusiera al curso de acción seguido.

En vista de lo anterior, y por el hecho de que para considerar este señalamiento de error no es necesario considerar la validez de los fundamentos de derecho esbozados por el foro de instancia para resolver que la referida cláusula era nula, confirmamos la sentencia sumaria parcial que al respecto emitió ese foro.

VI.

La decisión que hoy tomamos requiere que se devuelva el caso al foro de instancia para procedimientos ulteriores. Sin embargo, debemos aclarar varios aspectos que deben guiar la adjudicación final que eventualmente realice el tribunal recurrido.

El Consejo de Titulares del Condominio instó tres reclamaciones judiciales contra Galerías Ponceñas. En una de ellas se le exigió el cumplimiento de su obligación de pagar cuotas de mantenimiento; en otra, se solicitó al tribunal la imposición de un gravamen sobre un predio de terreno de su pertenencia, lo que en última instancia la coloca en posición de reconocer sobre su patrimonio derechos reales a favor terceros; y en la restante, se solicitó al tribunal que declarara nula cierta reserva de derechos contenida a su favor en la Escritura Matriz.

Según surge de los autos, el único titular que se ha opuesto a la presentación de las tres reclamaciones, y que además reclama participar en la asamblea que al respecto fue realizada, es la recurrente Galerías Ponceñas. Esta, por su parte, nos plantea que para excluir a una persona de las votaciones en una asamblea de condóminos habría que obtener una previa orden judicial para lo cual, a su vez, habría que realizar una asamblea en donde una mayoría de titulares, poseedora de más del cincuenta y un porciento de participaciones en el edificio, refrende tal proceder. Bajo este esquema, lo que parece ser un simple ejercicio democrático en el seno del Consejo de Titulares se convierte en un ejercicio fútil cuando el titular contra el cual el Consejo de Titulares

pretende dirigir la acción judicial es el único poseedor de más del cincuenta y un por ciento de las participaciones del edificio y al pretender participar en esa votación, actúa de forma contraria al principio de buena fe. No podemos refrendar esta posición.

Como se sabe, es un principio del derecho de profundo arraigo dentro de nuestro ordenamiento jurídico que las personas deben obrar conforme a la buena fe en el ejercicio de los derechos y privilegios que les son reconocidos. Véase Art. 1210 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3375; véanse además, Arts. 1042, 1043, 1049, 1051 y 1054; 31 L.P.R.A. secs. 2992, 2993, 3013, 3015 y 3018. Este principio constituye un criterio de conducta derivado de imperativos éticos socialmente existentes, Arthur Young & Company v. Virgilio Vega III, Opinión y Sentencia de 24 de mayo de 1994, 136 D.P.R. ___ (1994); Levy v. Autoridad de Edificios Públicos, Opinión y Sentencia de 15 de marzo de 1994, 135 D.P.R. ___ (1994), que trasciende la esfera contractual. Michel J. Godreau Robles, Lealtad y buena fe contractual, 58 Rev. Jur. U.P.R. 367 (1989).

De igual forma, nuestro ordenamiento jurídico impone a las personas el deber de dar fiel cumplimiento a las obligaciones en las que incurren. Ambos son principios jurídicos estrechamente vinculados que matizan todo nuestro esquema jurídico.

Si validáramos la posición de Galerías Ponceñas nos encontraríamos ante la situación de que, en casos como el de autos, un titular poseedor de más del cincuenta y un por ciento del total de las participaciones en un condominio se abrogaría un poder de veto en las deliberaciones que lo afectan directamente. Esto equivaldría a dejar al arbitrio del deudor el cumplimiento de sus obligaciones. Véase, Art. 1068 del Código Civil, 31 L.P.R.A. sec. 3043. Equivaldría a sostener una posición que violenta el principio de buena fe en el cumplimiento de las obligaciones que socava el espíritu de rectitud que debe imperar en el proceso deliberativo del Consejo de Titulares. Además, implicaría refrendar un flagrante abuso de derecho por parte del titular o titulares que, para incumplir sus

obligaciones, puedan impedir que el Consejo de Titulares inicie procedimientos judiciales en su contra para proteger los intereses de los restantes condóminos. Véase, Carmelo Campos Cruz, <u>Consideraciones en torno a la aplicación de la doctrina del abuso del derecho en el ámbito de la Propiedad Horizontal</u>, 63 Rev. Jur. U.P.R. 887 (1994).

En consecuencia, resolvemos que en situaciones como la de autos, en las que un titular posee una participación mayoritaria en los elementos comunes y, a su vez, pretende ejercer sus derechos como titular en una forma que constituye un claro abuso de derecho, la Junta de Directores está facultada para excluirlo de las votaciones que realice para obtener el consentimiento del Consejo de Titulares para instar procedimientos judiciales en su contra, y para excluir su participación en los elementos comunes del edificio en el cómputo que se realiza para determinar la concurrencia de mayoría, según ésta es definida en la Ley de Propiedad Horizontal y en el Reglamento de Administración. Este proceder evitaría que, en circunstancias como la de autos, una actuación abusiva por parte de un titular impida que el Consejo de Titulares actúe según sus mejores intereses.

Lo anterior nos convence de que en el presente caso, Galerías Ponceñas debe ser excluida de la votación en donde se buscaba ratificar la actuación de acudir ante los tribunales en una acción confesoria de servidumbre en su contra, y su participación en los elementos comunes no debe ser considerada en la determinación de si se satisfizo el criterio de mayoría adoptado en el Reglamento del edificio. Considerar su participación, constituiría conferirle poder de veto a esa gestión de una forma claramente abusiva, lo que impediría que el Consejo de Titulares pudiera reclamar ante los tribunales un derecho que de ordinario cualquier otra persona natural o jurídica podría reclamar. Se trata de una actuación que infringe el principio de buena fe, más aún cuando una de las alegaciones que se ha hecho en el foro de instancia es que Galerías Ponceñas adeuda dinero al Consejo de Titulares por concepto de cuotas de mantenimiento.

VII.

Por los fundamentos que anteceden, revocamos la sentencia sumaria parcial en la que el foro de instancia determinó que el Condominio Galerías Ponceñas era poseedor de una servidumbre de paso sobre un predio de terreno perteneciente a la corporación Galerías Ponceñas, y confirmamos la sentencia sumaria parcial en la que declaró nula la cláusula novena de la Escritura Matriz del referido condominio. El foro, de instancia, además, procederá a adjudicar la acción confesoria de servidumbre de conformidad con lo aquí resuelto.

Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares del
Condominio Galerías
Ponceñas

    Demandantes

    v.                             RE-95-16        Revisión

Galerías Ponceñas
Incorporado

    Demandado-Recurrente

SENTENCIA

En San Juan, Puerto Rico a 16 de abril de 1998.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se expide el auto solicitado en el caso de epígrafe. Se revoca la sentencia sumaria parcial emitida en el caso Civil Núm. 93-0013 y se devuelve el caso al tribunal de instancia para procedimientos ulteriores compatibles con lo expuesto en la Opinión del Tribunal.

Se confirma la sentencia sumaria parcial emitida en el caso Civil Núm. 93-0014.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurrió sin Opinión escrita. El Juez Asociado señor Fuster Berlingeri disintió sin Opinión escrita. El Juez Asociado señor Corrada del Río no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo