TEXTO COMPLETO DE LA SENTENCIA
El 23 de agosto de 2002, Nilda J. Dávila Marcano y José A. Hernández Colón presentaron Solicitud de Revisión Administrativa y nos solicitaron la revocación de la Resolución emitida y notificada el 14 de junio de 2002 por el Departamento de Asuntos del Consumidor (en adelante DACO) en el caso de Nilda J. Dávila Marcano y José A. Hernández Colón v. Junta de Directores Condominio Portal de la Reina, Querellas Número 100012506 y 100012562, sobre Propiedad Horizontal. Mediante dicha resolución, DACO determinó que la Junta de Directores del Condominio Portal de la Reina (en adelante Junta de Directores) debía tomar las medidas necesarias para restituir la asignación de los usos de los estacionamientos según consta en la Escritura Matriz y el plano inscrito y para prohibir cualquier actividad en los elementos comunes generales denominados “redondeles de acceso del estacionamiento a los edificios” hasta tanto el Consejo de Titulares determinara por unanimidad de votos cambiarle el destino.
DACO también determinó que la Junta de Directores debía convocar una Asamblea Extraordinaria para que el Consejo de Titulares del Condominio Portal de la Reina (en adelante Consejo de Titulares) acordara por mayoría de votos el tipo de actividades a ser celebradas en el condominio, ratificara la decisión de instalar antenas digitales de “Direct TV” en los techos del condominio, decidiera la utilización de estacionamientos provisionales bajo el principio de un uso más eficaz y resolviera la controversia sobre los aires acondicionados instalados en los elementos comunes conforme las directrices establecidas en la resolución.
Por los fundamentos que expondremos, EXPEDIMOS el Auto de Revisión Administrativa solicitado y CONFIRMAMOS la Resolución recurrida.
I
El 6 de marzo de 2001, Nilda J. Dávila Marcano y José A. Hernández Colón (en adelante Querellantes) *804 presentaron ante DACO la Querella Número 100012506 contra la Junta de Directores. En la misma, los querellantes alegaron que la Junta de Directores había incurrido en inacción y falta de atención y diligencia en el descargo de sus funciones y que tanto la Asamblea celebrada por la Junta de Directores el 20 de septiembre de 2000 como los acuerdos tomados en ella sobre los estacionamientos provisionales y sobre la instalación de antenas digitales Direct TV en los techos del condominio eran nulos. Por lo tanto, los querellantes solicitaron a DACO que declarara Con Lugar la querella, anulara la referida Asamblea, ordenara la remoción de las antenas digitales Direct TV ya instaladas y ordenara la celebración de una nueva Asamblea.
El 9 de marzo de 2001, los querellantes presentaron una segunda querella contra la Junta de Directores, Querella Número 100012562. En ésta, los querellantes alegaron que la Junta de Directores no había actuado conforme la Escritura Matriz, el Reglamento del condominio y la Ley de Propiedad Horizontal, 31 L.P.R.A. Secciones 1291, et seq. Los querellantes también alegaron que la Junta de Directores permitía el uso de áreas comunes para transmitir las peleas boxísticas de Felix “Tito” Trinidad, así como la alteración de las fachadas del condominio a través de la instalación de las antenas digitales Direct TV en los techos, la instalación de unidades de aires acondicionados en elementos comunes del condominio y la tenencia de mascotas en contravención a las normas de salud ambiental. Por lo tanto, los querellantes solicitaron a DACO que consolidara esa querella con la querella número 100012506, declarara Con Lugar las mismas, apercibiera a la Junta de Directores de su obligación de administrar el régimen de propiedad horizontal y el Reglamento del condominio, impusiera a ésta el resarcimiento de los daños sufridos y emitiera una Orden de Cese y Desista contra la Junta de Directores para que ésta no autorizara ni permitiera la transmisión de la próxima pelea boxística de Félix “Tito” Trinidad en áreas comunes del condominio.
El 9 de abril de 2001, DACO emitió Orden y consolidó ambas querellas. El 17 de abril de 2001, la Junta de Directores contestó las referidas querellas y solicitó a DACO la desestimación de las mismas. La Junta de Directores alegó que las querellas no exponían hechos que justificaran la concesión de un remedio, que ella no había violado las disposiciones de la Ley de Propiedad Horizontal, supra, ni del Reglamento del condominio, que las querellas adolecían de vaguedad y que DACO no tenía jurisdicción para resolver las controversias planteadas por los querellantes.
El 21 de septiembre de 2001, los querellantes presentaron “Moción Solicitando Remedio Urgente, Orden de Cese y Desista y Otros Extremos” y solicitaron a DACO que emitiera una orden de cese y desista “prohibiendo el uso de las áreas de acceso y plazoleta central de la Torre Reina Victoria para la celebración de actos y en específico de la próxima transmisión de la pelea de Félix “Tito ” Trinidad, así como de cualquier otro evento de igual o similar naturaleza”. Además, los querellantes alegaron que la Junta de Directores “falta a su deber al permitir, estimular y perseguir que se apruebe la instalación del sistema de transmisión Direct TV en áreas comunes generales del inmueble. ”
Luego de varios incidentes procesales, el 17 de diciembre de 2001, DACO celebró vista administrativa y una inspección ocular de las facilidades del condominio. Al concluir las mismas, DACO ordenó a las partes presentar sendos Memorandos de Derecho respecto a la colocación de antenas digitales Direct TV en el techo/azotea del condominio. El 3 de enero de 2002, la Junta presentó su memorando y alegó que la instalación de las referidas antenas había sido aprobada por voto mayoritario del Consejo de Titulares en una asamblea extraordinaria, que el techo/azotea del condominio mantenía su naturaleza de elemento común general y que iodos los titulares podían hacer un uso más eficaz del mismo al utilizarlo para colocar las antenas digitales Direct TV.
La Junta de Directores también alegó que “el acuerdo según aprobado no autoriza el uso irrestricto del techo para colocar las antenas, sino que establece el máximo de antenas permitidas por torre (2), de manera que puedan servirse de ellas el mayor número de titulares, provee para la ubicación de las antenas en la parte del medio de las torres de manera que no se afecte la fachada, provee también para que toda cablería baje del techo a través de los conductos de Cable TV, de manera que no se afecte también el aspecto estético. ”
*805 Por su parte, el 4 de enero de 2002, los querellantes presentaron su memorando y alegaron que las actuaciones de la Junta de Directores violaban la conservación, mantenimiento y seguridad del condominio, que la instalación de las antenas digitales Direct TV en los techos del condominio era nula porque el techo/azotea era un elemento común general indispensable para el mismo y el desarrollador del condominio no destinó el uso del techo/azotea para algún apartamento en particular y que dicha instalación no había sido aprobada por voto unánime del Consejo de Titulares.
Los querellantes también alegaron que ‘‘forzoso es concluir la nulidad del acto permitido por la Junta de Directores anterior y actual del Condominio Portal de la Reina, así como las actuaciones de los titulares al instalar, permitir la instalación y no ejercer los deberes encomendados por los titulares del Condominio Portal de la Reina a los miembros de la Junta de Directores cuya inacción y/o acción impropia ha causado la instalación de las antenas en el edificio Reina Victoria y en otros Edificios que componen el Condominio Portal de la Reina. ”
El 8 de enero de 2002, DACO continuó la vista administrativa y el 7 y 8 de febrero de 2002, respectivamente, la Junta de Directores y los querellantes presentaron sendos memorandos de derecho sobre el uso de un área común general para transmitir las peleas boxísticas en las que Félix “Tito” Trinidad participó. En su memorando, la Junta de Dierectores alegó que ni la Escritura Matriz del Condominio ni la Escritura de Acta de Edificación de la Torre Reina Victoria proscriben específicamente dichos actos, que tanto la Ley de Propiedad Horizontal, supra, como el Reglamento del Condominio autorizan “el que se puedan utilizar aparatos de sonido (como en este caso sería un televisor, que además transmite imagen) en un elemento común general con el caveat de que no se perturbe o moleste a los titulares y demás personas que se encuentran en el condominio” y que “la Junta de Directores entendió que no era prudente intervenir con dichas actividades porque la situación no presentaba perjuicio sustancial y desproporcionado para los querellantes. ”
Por su parte, los querellantes alegaron que “el uso de los pasillos del Edificio Reina Victoria, siendo un elemento común limitado es objeto de una normativa de uso adecuado a su destino, sin estorbar ni menoscabar la sana convivencia de los titulares vecinos que allí habitan” y que “el redondel central que conecta las aceras a las escaleras del Edificio Reina Victoria es un claro elemento común general cuyo propósito o finalidad es discurrir para accesar a las áreas privadas. ”
Luego de evaluar los testimonios vertidos por las partes en las vistas administrativas, así como la evidencia contenida en el expediente administrativo y la información recopilada en la vista ocular, el 14 de junio de 2002, DACO emitió y notificó Resolución. En ésta, DACO determinó que la instalación de las antenas digitales Direct TV en el techo/azotea del condominio podía ser autorizada por voto mayoritario del Consejo de Titulares porque no constituia un cambio de fachada, constituia un uso más eficaz de los elementos comunes, no representaba perjuicio alguno a los titulares o a los demás elementos comunes, no cambiaba el destino del techo/azotea y no era una estructura permanente.
También, DACO determinó que la transmisión de peleas boxísticas en las que Félix “Tito" Trinidad participó “por su naturaleza representa una actividad de aglutinamiento de personas, genera ruidos, y en lugar el cual se lleva a cabo impide el acceso a los edificios del condominio ” por lo que “responde a los mejores intereses de la comunidad celebrar este tipo de actividad en los lugares destinados y especificados en la escritura matriz, en este caso, el gazebo ” y que la no fiscalización del uso adecuado de las áreas de estacionamiento de vehículos de motor era una omisión a la sana administración de todos los elementos comunes que la Junta de Directores venía obligada a realizar. Por lo tanto, DACO ordenó a la Junta de Directores cumplir con lo siguiente:

“Se Ordena a la Junta de Directores del Condominio Portal de la Reina que a partir de la fecha de notificación de la presente resolución tome las medidas necesarias para prohibir cualquier actividad en los elementos comunes generales denominados “redondeles de acceso del estacionamiento a los edificios”, hasta 
*806
tanto el Consejo de Titulares determine cambiarle el destino. Esta decisión deberá ser tomada por unanimidad.

Se Ordena a la Junta de Directores del Condominio Portal de la Reina, que dentro del término de 45 días desde la notificación de la presente resolución, convoque a asamblea extraordinaria para que el Consejo de Titulares acuerde por mayoría de votos sobre los siguientes asuntos a incluirse en la agenda: (1) actividades a celebrarse tales como serenatas y parrandas que se lleven a cabo en el condominio, (2) ratificar la decisión sobre las antenas digitales, (3) utilización de estacionamientos provisionales bajo el principio de un uso más eficaz, sin afectar o deteriorar los elementos comunes generales, el área de rodaje, sin utilizar los estacionamientos de impedidos o de carga, y sin afectar la calidad de vida de los titulares, (4) los aires acondicionados instalados en elementos comunes conforme a las directrices de esta resolución en la controversia número tres (3) y por unanimidad, el Consejo de Titulares deberá decidir si le cambia el destino de las plazoletas o redondeles.

Se Ordena a la Junta de Directores del Condominio Portal de la Reina, que a partir de la fecha de notificación de la presente Resolución, tome las medidas necesarias para restituir la asignación de los usos de los estacionamientos según consta en la escritura matriz y el plano inscrito.” 

El 8 de julio de 2002, los querellantes presentaron Moción de Reconsideración y solicitaron a DACO que reconsiderara su determinación en tomo a que la decisión sobre la instalación de antenas digitales Direct TV podía ser por voto mayoritario del Consejo de Titulares y que la Junta de Directores no autorizó las transmisiones de las peleas boxísticas de Félix ‘Tito” Trinidad. Además, los querellantes solicitaron a DACO que celebrara una vista para dilucidar el aspecto de los daños y perjuicios sufridos por ellos.
DACO acogió la moción de reconsideración presentada por los querellantes y el 23 de julio de 2002, notificada el 24 de julio de 2002, emitió Resolución en reconsideración mediante la cual reafirmó su decisión sobre la instalación de las antenas digitales Direct TV porque ello constituía el uso más eficaz de los elementos comunes generales y citó a las partes a una vista administrativa a ser celebrada el 27 de septiembre de 2002 para dilucidar el aspecto de los daños reclamados por los querellantes. DACO también determinó que “entendemos que los actos realizados por algunos de los miembros de la Junta de Directores los compromete en su carácter personal sujeto a las medidas que el consejo de titulares entienda convenientes contenidas en la Ley de Propiedad Horizontal, supra, cuando estos actos atenten contra el bienestar de la calidad de vida del consejo de titulares. ”
No conforme, el 23 de agosto de 2002, los querellantes comparecieron ante este Tribunal mediante el recurso de Revisión Administrativa y nos solicitaron la revocación de la resolución emitida por DACO. En síntesis, los querellantes alegan que DACO erró al concluir que ni la Escritura Matriz ni el Reglamento del Condominio disponían sobre la instalación de las antenas digitales Direct TV y que “el elemento común general conocido como techo o azotea del Condominio Portal de la Reina puede ser objeto de uso eficaz, mediante la determinación mayoritaria de los titulares de dicha comunidad, ya que ello no representa perjuicio alguno a los titulares o a los demás elementos comunes. ”
Los querellantes también alegaron que “el desarrollador sí proveyó una facilidad que mediante el correspondiente dispositivo de tubo puede colocarse la cablería correspondiente para servicio televisivo de Cable TV” y que “sin embargo, la comunidad pretende ahora no hacer uso de dicho sistema el cual conlleva uso de satélites sin instalación de antena alguna en el techo o azotea del edificio, y por el contrario, pretende la comunidad de titulares aprobar por mayoría la instalación de unas antenas en abierta contravención a lo estipulado en la Escritura Matriz. ”
Por último, el 23 de septiembre de 2002 la Junta de Directores presentó su Oposición al recurso de revisión administrativa y nos solicitó la confirmación de la resolución recurrida. La Junta de Directores alegó que dada la *807 vista ocular celebrada, el “ Juez Administrativo tuvo ante sí la configuración física del condominio, su fachada, su distribución espacial, en fin todos los elementos que le caracterizan dentro del régimen de propiedad horizontal,” por lo que, su determinación sobre la instalación de antenas digitales Direct TV debía ser confirmada. También, la Junta de Directores alegó que “la Escritura Matriz no dispone nada sobre la instalación o no de las antenas digitales en el techo o azotea del Condominio” y que la resolución recurrida debía ser validada porque DACO tenía vasta experiencia y conocimiento especializado en materia de propiedad horizontal.
Al estar perfeccionado el recurso ante nuestra consideración, procedemos a resolver.
II
La Ley de Propiedad Horizontal, supra, establece un esquema de manejo y de administración de los edificios organizados a su amparo, en el cual el Consejo de Titulares es el “organismo supremo del régimen” que constituye el cuerpo deliberativo y normativo encargado de tomar las decisiones de trascendencia para los condominos, Consejo Tit. v. Galerías Ponceñas, Inc., 145 D.P.R. 315, 327 (1998); Alvarez Figueredo v. González Lamela, 138 D.P.R. 958, 966 (1995). No obstante, los acuerdos de dicho consejo están subordinados a la propia Ley de Propiedad Horizontal, supra, a la Escritura Matriz y al Reglamento de Administración que sea aprobado, Consejo Tit. v. Galerías Ponceñas, Inc., supra, página 337.
Por un lado, el Artículo 11 de la Ley de Propiedad Horizontal, supra, enumera los elementos comunes generales del inmueble sometido a ese régimen. Entre esos elementos están los techos, las galerías, los vestíbulos y las escaleras y vías de entrada y salida o de comunicación. Por otro lado, los Artículos 13 y 14 de la Ley de Propiedad Horizontal, supra, establecen que los elementos comunes, ya sean generales o ilimitados, deberán ser mantenidos en indivisión forzosa y que cada titular podrá usarlos conforme a su destino siempre que no impida o estorbe el legítimo derecho de los demás titulares. A su vez, el Artículo 16 de la citada ley regula el ámbito de los acuerdos para conservación y uso de los elementos comunes del inmueble. Específicamente, el referido artículo dispone que:

“Las obras necesarias para la conservación del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares.

Para toda otra obra que afecte los elementos comunes del inmueble [se] requerirá el consentimiento unánime de todos los titulares. ”

III
En su función revisora, los tribunales apelativos deben ser cautelosos al intervenir con las determinaciones administrativas de los foros especializados porque las conclusiones y determinaciones de los organismos administrativos merecen gran consideración y respeto por los tribunales en la etapa de revisión judicial, Rivera Concepción v. Administración de Reglamentos y Permisos, _ D.P.R. _ (2000), 2000 J.T.S. 155, página 160; Assoc. Ins. Agencies, Inc. v. Com. Seg. de P.R., 144 D.P.R. 425, 436 (1997); Metropolitana, S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Viajes Gallardo v. Clavell, 131 D.P.R. 275, 289-290 (1992).
La revisión judicial es limitada. Sólo determina si la agencia administrativa actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción, Municipio de San Juan v. Junta de Calidad Ambiental, _ D.P.R. _ (1999), 99 J.T.S. 152, página 125; T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E., _ D.P.R. _ (1999), 99 J.T.S. 60, página 884; Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 761 (1999). A tenor con esta norma de deferencia, los tribunales no alteran las determinaciones de hechos de los organismos administrativos si del expediente administrativo surge evidencia sustancial que las sostenga, Sección 4.5 de la L. P.A.U., 3 L.P.R.A. Sección 2175; Municipio de San Juan v. Junta de Calidad Ambiental, _ D.P.R. _ (2000), 2000 J.T.S. 193, página 474; Asociación Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, _ D.P.R. _ (2000), 2000 J.T.S. 21, páginas 560-561; Domínguez Talavera v. *808 Caguas Expressway Motors, Inc., _ D.P.R. _ (1999), 99 J.T.S. 85, páginas 1067-1068; García Oyola v. J.C.A., 142 D.P.R. 532, 540 (1997).
El propósito de la regla de evidencia sustancial, aplicable a las determinaciones de hechos de las agencias administrativas, es “evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor, ” López v. Junta de Planificación, 80 D.P.R. 646, 673 (1958). Según nuestro Tribunal Supremo la ha definido anteriormente, evidencia sustancial “es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión,” Asociación Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, supra, página 561; Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131 (1998).
IV
En el presente recurso, los querellantes alegan que DACO erró al determinar que la instalación de antenas digitales Direct TV en el techo del condominio podía ser autorizada mediante el voto mayoritario del Consejo de Titulares y que ni en la Escritura Matriz ni en el Reglamento del Condominio existían disposiciones a tales efectos. Sin embargo, de la aplicación de las normas anteriormente expuestas surge que dichos errores no fueron cometidos.
Este Tribunal ha analizado minuciosamente el expediente de autos, particularmente la Escritura Matriz, el Reglamento del Condominio, el “Acta Aclaratoria sobre Régimen de Propiedad Horizontal Portal de la Reina” y el “Acta de Edificación sobre Régimen de Propiedad Horizontal Portal de la Reina y Reconciliación de las Areas Edificadas,” y ninguno de esos documentos contienen disposición alguna que verse sobre la instalación o no de antenas digitales Direct TV en los techos del condominio u otros artefactos o equipos de índole similar.
El techo del condominio es un elemento común del mismo y la instalación de las antenas digitales Direct TV es un acto de conservación y uso de dicho elemento común que, según lo dispuesto por el Artículo 16 de la Ley de Propiedad Horizontal, supra, sólo tiene que ser aprobado por la mayoría de los titulares. Ello quiere decir que DACO actuó correctamente al emitir la resolución recurrida. Además, cabe señalar que la referida resolución recurrida está basada en la evidencia sustancial contenida en el expediente administrativo; máxime cuando DACO celebró una vista ocular para inspeccionar las facilidades del condominio y a base de dicha inspección, determinó que la instalación de antenas digitales Direct TV no alteraba la fachada del condominio, constituía un uso más eficaz de los elementos comunes del inmueble, no cambiaba el destino del techo, no representaba perjuicio a los titulares o demás elementos comunes y no constituia una estructura permanente.
Por consiguiente, como DACO no actuó arbitraria ni caprichosamente al emitir la resolución recurrida y como las resoluciones administrativas merecen gran consideración y respeto en la etapa de revisión judicial, procede confirmar la resolución recurrida.
V
En virtud de los fundamentos anteriormente expuestos, EXPEDIMOS el Auto de Revisión Administrativa solicitado y CONFIRMAMOS la Resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau Secretaria General
ESCOLIO 2003 DTA 27
1. Resolución recurrida, a la página 8.