EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Departamento de Asuntos del Consumidor, Región de San Juan | |
| Agencia-Recurrida | Certiorari |
| Orlando González Rivera | 2006 TSPR 177 |
| Querellante-Recurrido | 169 DPR ____ |
| v. | |
| Junta de Directores Condominio Sandy Hills | |
| Querellada-Peticionaria | |

Número del Caso: CC-2004-929

Fecha: 27 de noviembre de 2006

Tribunal de Apelaciones:

       Región Judicial de San Juan

Juez Ponente:

       Hon. Zadette Bajandas Vélez

Abogado de la Parte Peticionaria:

       Lcdo. José E. De La Cruz Skerrett

Abogado de la Parte Recurrida:

       Por Derecho Propio

Materia: Revisión Administrativa de Resolución del Departamento de Asuntos del Consumidor

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Asuntos del
Consumidor, Región de San Juan

    Agencia-Recurrida

Orlando González Rivera

    Querellante-Recurrido                 CC-2004-929     Certiorari

        v.

Junta de Directores Condominio
Sandy Hills

    Querellada-Peticionaria


Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton


San Juan, Puerto Rico a 27 de noviembre de 2006.

En esta ocasión debemos determinar si la Junta de Directores de un condominio sometido al régimen de propiedad horizontal debe contar con el voto unánime del Consejo de Titulares para desistir de una acción judicial instada a nombre de éste para corregir alteraciones efectuadas en la fachada del inmueble. Veamos.

I

El Sr. Orlando González Rivera (en adelante, González Rivera) es titular de un apartamento en el Condominio *Sandy Hills* (en adelante, el condominio), localizado en Fajardo, Puerto Rico. En el 1999, fue electo Presidente de la Junta de Directores del condominio y ocupó ese puesto hasta el año 2002.

Tras el paso del huracán Georges, González Rivera hizo un recorrido por los apartamentos del condominio, con el fin de documentar los daños sufridos a consecuencia del fenómeno atmosférico. Mientras realizaba la inspección, González Rivera anotó las alteraciones de fachada que pudo observar en cada uno de los apartamentos que visitó. Durante su recorrido, se percató de que algunos titulares habían instalado rejas y portones distintos a los originales, tanto en los balcones, como en las puertas de entrada de los apartamentos. Además, habían instalado cortinas y tormenteras permanentes en los balcones, y extendido las puertas o ventanas hasta el balcón, entre otras alteraciones.

Por esta razón, la Junta de Directores contrató un bufete de abogados para que investigara y preparara una opinión legal sobre las alteraciones de fachada descubiertas. Luego de ello, los abogados le recomendaron a la Junta notificar a los condóminos sobre las violaciones encontradas y ejercer su obligación de hacer valer la ley.

La Junta de Directores acogió las recomendaciones de sus abogados y le cursó una misiva a los titulares, informándoles sobre las infracciones a la Ley de Propiedad Horizontal y la necesidad de revertir la fachada a su estado original. Además, la Junta le advirtió a los titulares la posibilidad de tomar acción judicial, de no corregirse las alteraciones señaladas.

Posteriormente, el condominio celebró una asamblea ordinaria en la que se discutió la posibilidad de enmendar la escritura matriz del condominio con el fin de legalizar los cambios hechos a la fachada. Sin embargo, no se obtuvo el voto unánime de los titulares, requerido para autorizar una enmienda a la escritura matriz.

Aproximadamente un año y medio después, González Rivera presentó una demanda en representación del Consejo de Titulares, solicitando un interdicto permanente contra noventa (90) titulares del condominio, incluyendo dos (2) miembros de la Junta. En ese momento, González Rivera todavía era Presidente de la Junta de Directores del condominio. Solicitó la restitución inmediata de los apartamentos a su estado original, más costas y honorarios de abogado. Para esta gestión, González Rivera no obtuvo el consentimiento previo del Consejo de Titulares, ni consultó con la Junta de Directores antes de presentar la demanda.

Luego de la iniciación del pleito, el condominio celebró su asamblea anual ordinaria y eligió una nueva Junta de Directores. Seis (6) de los siete (7) miembros de la nueva Junta habían sido demandados en el referido pleito.

Así las cosas, la nueva Junta convocó una asamblea extraordinaria para proponerle al Consejo de Titulares desistir del pleito incoado, toda vez que, a su juicio, González Rivera no tenía la autoridad para demandar a los

condóminos a nombre del Consejo de Titulares. Esta asamblea no contó con el quórum necesario, por lo que la Junta emitió una segunda convocatoria de asamblea extraordinaria para discutir su propuesta.

En desacuerdo con la manera de proceder de la nueva Junta, González Rivera presentó una querella ante el Departamento de Asuntos del Consumidor (en adelante, DACO). El ex-presidente le solicitó a la agencia que emitiera una orden de cese y desista en contra de la nueva Junta de Directores, por entender que sus intentos por desistir del pleito judicial eran contrarios a derecho.

La nueva Junta de Directores celebró la asamblea extraordinaria sin que DACO se hubiese expresado sobre la querella de González Rivera. La mayoría de los presentes votó a favor de desistir de la demanda pendiente ante el Tribunal de Primera Instancia. A consecuencia de ello, González Rivera enmendó su querella, informó a DACO sobre la votación y reiteró su solicitud para que la agencia emitiera una orden prohibiendo cualquier intento por desistir de la acción incoada por él. Según adujo, la votación había sido ilegal y era contraria a los mejores intereses del condominio.

DACO emitió una resolución preliminar ordenando el cese y desista. Además, citó a las partes para una vista administrativa en la que la Junta debía mostrar causa por

la cual no debía decretarse la permanencia del interdicto.

Celebrada la vista, DACO concluyó que González Rivera tenía la capacidad representativa para instar una demanda a nombre del Consejo de Titulares, aun sin el consentimiento previo de la Junta de Directores y del Consejo de Titulares. En vista de que la acción judicial versaba sobre alteración de fachada, DACO razonó que la decisión de desistir de dicho pleito requería el consentimiento unánime de los titulares. Por esta razón, decretó la permanencia de la orden de cese y desista, y ordenó a la Junta a ser diligente en la tramitación del litigio. Dicha determinación fue reiterada por DACO ante la presentación de una moción de reconsideración.

Insatisfecha, la Junta presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones.[1] Dicho foro confirmó la resolución de DACO.

Inconforme, la Junta de Directores comparece ante este Tribunal mediante petición de *certiorari*. En esencia, argumenta que erraron tanto el Tribunal de Apelaciones como DACO al avalar la acción de González Rivera de presentar la demanda por alteración de fachada sin contar con el consentimiento previo del Consejo de Titulares. Además, arguyen que debe permitírsele al

---

[1] Ya para esta fecha, el Tribunal de Primera Instancia había ordenado el desistimiento sin perjuicio de la causa judicial iniciada por González Rivera, aun cuando el nuevo Presidente de la Junta manifestó que no podía solicitar el desistimiento hasta tanto se revocara la determinación del DACO.

Consejo de Titulares desistir de la acción incoada, toda vez que ya cuentan con el consentimiento de la mayoría de los condóminos para así proceder.

Vistos los argumentos presentados, concedimos término a la parte recurrida para que mostrase causa por la cual no debíamos revocar la sentencia del foro apelativo. En vista de que dicha parte no ha comparecido, procedemos a resolver las controversias sin trámite ulterior.

II

De entrada, es menester aclarar que la función revisora de los tribunales con respecto a las determinaciones de las agencias administrativas es una de carácter limitado. *Rebollo Vda. de Liceaga v. Yiyi Motors*, res. el 13 de enero de 2004, 2004 TSPR 2. Así se desprende de la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2175, al establecerse que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".

Sin embargo, las conclusiones de derecho de la agencia pueden ser revisadas en todos sus aspectos. *Torres Acosta v. Junta Examinadora de Ingenieros, Arquitectos y Agrimensores*, res. el 27 de abril de 2004, 2004 TSPR 65. Esto significa que dichas conclusiones serán confirmadas por los tribunales en la medida en que

se ajusten al mandato de ley. *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269 (2000). A tenor con lo anterior, los tribunales no avalarán una interpretación estatutaria que afecte derechos fundamentales, que resulte irrazonable o que conduzca a la comisión de injusticias. *Martínez Segarra v. Rosado Santoni*, res. el 14 de septiembre de 2005, 2005 TSPR 127; *Costa, Piovanetti v. Caguas Expressway*, 149 D.P.R. 881 (1999).

Con este marco jurídico, nos corresponde pasar juicio sobre una conclusión de derecho del DACO, la cual estableció el requerimiento del voto unánime del Consejo de Titulares para poder desistir de una demanda iniciada por el antiguo Presidente de la Junta de Directores. Procedemos a analizar si dicha determinación es cónsona con la ley y con nuestros pronunciamientos sobre el régimen de propiedad horizontal.

III

La ley vigente al momento de los hechos ante nuestra consideración era la antigua Ley de Propiedad Horizontal, Ley Núm. 104 de 25 de junio de 1958, según enmendada, 31 L.P.R.A. 1291 *et seq*. Esta pieza legislativa fue extensamente enmendada por la Ley Núm. 103 de 25 de abril de 2003, conocida como la *Ley de Condominios*. No obstante, los pronunciamientos que procedemos a exponer son igualmente aplicables al estado de derecho actual.

A.

La Ley de Propiedad Horizontal estableció los mecanismos para tramitar los inevitables conflictos que surgen al residir en una estructura con elementos comunes diversos titulares. *Amill Bracer v. Junta de Directores Condominio Pumarada*, 2002 TSPR 38, res. el 4 de abril de 2002, *Srio. D.A.C.O. v. J. Condominos C. Martí*, 121 D.P.R. 807 (1988). Como parte del esquema legislativo, la propia ley proveyó los organismos que componen el gobierno interno del régimen, identificándolos como la Junta de Directores, incluyendo su Presidente, y el Consejo de Titulares. *Id.*

El Consejo de Titulares, compuesto por la totalidad de los titulares del condominio, es el organismo rector y deliberativo; además de ser la entidad investida por la ley con personalidad jurídica y dominio sobre todas las áreas comunes del condominio. Ley de Propiedad Horizontal, Art. 38, 31 LPRA sec. 1293b; *Amill Bracer v. Junta de Directores Condominio Pumarada*, *supra*; *Cond. Prof. S.J. Health Centre v. P.R.F., Inc.*, 133 D.P.R. 488 (1993); *Arce v. Caribbean Home Construction Corp.*, 108 D.P.R. 225 (1978). La personalidad jurídica del Consejo de Titulares es independiente a la de cada uno de sus miembros. *Cond. Prof. S.J.H. Centre v. P.R.F., Inc.*, *supra*.

El Consejo de Titulares, a su vez, elige una Junta de Directores. Ésta compone el órgano ejecutivo de la

comunidad de condóminos con el deber de "[a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares". Ley de Propiedad Horizontal, Art. 38-D(a), 31 L.P.R.A. sec. 1293b-4(a). Además, debe "[c]umplir y hacer cumplir las disposiciones de [la Ley de Propiedad Horizontal], del reglamento y los acuerdos del Consejo de Titulares". Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1293b-4(i). *Amill Bracer v. Junta de Directores Condominio Pumarada*, *supra*.

El Presidente de la Junta de Directores tendrá la responsabilidad de representar al Consejo de Titulares en cualquier acción judicial y en todo asunto que afecte a la comunidad. Ley de Propiedad Horizontal, Art. 38, 31 L.P.R.A. sec. 1293b-4A. Con relación a las facultades del Presidente de la Junta de Directores, en *Consejo de Titulares v. Galerías Ponceñas*, 145 D.P.R. 315, 332 (1998), resolvimos que éste tiene autoridad para acudir a los tribunales con el fin de lograr el cumplimiento de la Ley de Propiedad Horizontal, sin necesidad de obtener previamente el aval del Consejo de Titulares, siempre que la acción esté relacionada con facultades que le fueron expresamente delegadas por la Ley.

Según concluimos en aquella ocasión, la facultad de la Junta o su Presidente de presentar una demanda a nombre del Consejo, sin contar con su aprobación, dependerá en gran medida de la naturaleza de la potestad que le concede la ley y de la agilidad que la Asamblea Legislativa pretendió conferirle en su gestión administrativa. *Consejo de Titulares v. Galerías Ponceñas*, *supra*; *véase además*, Godreau, *Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la junta de directores y del presidente para llevar acciones a nombre del condominio*, 64 Rev. Jur. U.P.R. 481, 492-496 (1995).

Aunque, sin duda, la mejor práctica sería obtener el consentimiento previo de una mayoría del Consejo de Titulares para incoar una acción, pueden surgir instancias en las cuales sea preciso acudir a los tribunales con premura, por lo que resulta enteramente razonable acudir al cauce judicial sin notificarlo a los condóminos. *Consejo de Titulares v. Galerías Ponceñas, Inc.*, *supra*, a la pág. 330. Sin embargo, el Presidente está obligado a informar posteriormente a los titulares sobre el curso de acción tomado, dentro de un plazo razonable, ya que ello implica el uso de fondos comunitarios. *Id*., a la pág. 333.

A pesar de que la Ley de Propiedad Horizontal de 1958 no contemplaba las instancias en las que el Presidente de la Junta tenía que solicitar el

consentimiento del Consejo previo a la presentación de una acción judicial, sí surge claramente de la jurisprudencia una presunción de que el Presidente de la Junta tiene la autoridad para presentar una demanda a nombre del Consejo de Titulares. *Consejo de Titulares v. Galerías Ponceñas, Inc., supra*, a la pág. 331; Godreau, *Capacidad legal de la junta, supra*, a la pág. 496. De hecho, la Ley de Condominios, Ley Núm. 103 de 25 de abril de 2003, adoptó expresamente dicho principio en su Artículo 30, que enmienda el Art. 38-E de la Ley de Propiedad Horizontal.

No obstante, en vista de que es el Consejo de Titulares el cuerpo deliberativo y normativo encargado de tomar las decisiones de trascendencia para los condóminos, es éste el que posee la facultad de tomar las decisiones sobre el curso que ha de seguir el caso. *Consejo Titulares v. Galerías Ponceñas, Inc., supra*; Godreau, *Capacidad legal de la junta, supra*, a la pág. 492. A consecuencia de lo anterior, el desistimiento voluntario de una causa judicial pendiente es una determinación que le corresponde inherentemente al Consejo de Titulares.

Ahora bien, la Ley de Propiedad Horizontal no estableció cómo se habría de determinar si el Consejo de Titulares, en efecto, decidió desistir del pleito judicial iniciado a su nombre. Es por ello que estamos llamados a realizar una interpretación "constructiva e

imaginativa" de esta ley para encontrar una solución. *Véase Castle Enterprises, Inc. v. Registrador*, 87 D.P.R. 775 (1963). Claro está, en dicho ejercicio debe imperar la razonabilidad, puesto que nada logramos con resultados impracticables. En particular, debemos determinar si por el hecho de que la demanda intente vindicar derechos relacionados con la fachada del inmueble, se requiere el voto unánime de los titulares para desistir de esta reclamación, tal y como lo concluyó DACO.

B.

La aprobación de la Ley de Propiedad Horizontal adelantó el propósito de armonizar el disfrute de cada apartamento por su titular y las limitaciones a ese disfrute en interés de la colectividad. *Cond. Prof. S.J.H. Centre v. P.R.F., Inc.*, *supra*. En este sentido, la ley delimita las mejoras, modificaciones, reparaciones y la limpieza que un titular puede llevar a cabo en su apartamento. *Junta Dir. Cond. Montebello v. Torres,* 138 D.P.R. 150, 154-155 (1995).

Estas limitaciones se reflejaron en el Artículo 15 de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1291m, que estableció, en lo pertinente:

> (d) Cada titular deberá ejecutar a sus únicas expensas las obras de modificación, reparación, limpieza, seguridad, y mejoras de su apartamiento, sin perturbar el uso y goce legítimo de los demás, **ni cambiar la forma externa de las fachadas**, ni decorar las paredes, puertas o ventanas exteriores con colores o

tonalidades distintas a las del conjunto. (…)
(…)

La infracción a estas reglas dará lugar al ejercicio de la acción de daños y perjuicios por aquel titular que resulte afectado, además de cualquier otra acción que corresponda en derecho. (Énfasis nuestro).

Anteriormente, hemos definido el concepto fachada como el diseño arquitectónico y estético exterior del edificio, según se desprende de los documentos constitutivos del condominio. *Junta Dir. Cond. Montebello v. Torres, supra*, a la pág. 157; Godreau, El Condominio: el régimen de la propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, págs. 152-152. La prohibición de la alteración de la fachada es una de las más neurálgicas de nuestro ordenamiento y una de las que más controversias ha generado, pues "es una materia en la cual chocan con frecuencia los estilos de vida y gustos individuales de un titular, con los del resto de los propietarios y con la armonía que debe prevalecer en la vida en un condominio". *Junta Dir. Cond. Montebello v. Torres, supra*, a la pág. 155.

Por tal motivo, cuando se trata de alteraciones que afectan la estética del edificio, al igual que a sus condiciones de seguridad, es necesario que las obras sean autorizadas por todos los propietarios. *Id.*, a la pág. 157. Por ello, el Artículo 16 de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1291n, exige el consentimiento unánime de los titulares del condominio

para realizar cualquier obra que afecte, menoscabe o disminuya el valor de los elementos comunes. *Véase* Godreau, El Condominio, *op cit.*, a la pág. 128.

No obstante lo anterior, no se deben confundir los estándares aplicables para efectuar un <u>cambio de fachada</u> u otro cambio similar, con aquellos que gobiernan <u>el acto de decidir</u> si vindicar o no posibles derechos afectados por tales alteraciones.  Con respecto a esto último, debemos señalar que las decisiones para las cuales se exige el consentimiento unánime de los condóminos son aquellas "de especial envergadura y en las que se verían afectados los intereses fundamentales de cualquier propietario". Godreau, El Condominio, *op cit.*, a la pág. 117.  La unanimidad, como requisito para validar ciertas acciones, representa una exigencia de difícil consecución, y en muchas instancias, frustraría con un alto rigorismo el manejo reflexivo del régimen de propiedad horizontal. *Véase*, Godreau, *Capacidad legal de la junta, supra*, n. 6, pág. 483.  Es por eso que la Ley de Propiedad Horizontal dispone expresamente aquellas instancias en las que el legislador entendió apremiante exigir la unanimidad de los titulares.[2] Sin embargo, <u>en</u>

---

[2]     Por ejemplo, se requiere unanimidad para la alteración del uso fijado en la escritura matriz para un apartamento; para constituir una hipoteca sobre los elementos comunes; para destinar algún elemento común a un particular; para transformar un elemento común general en uno limitado; para construir nuevos pisos, sótanos o excavaciones, o realizar obras que afecten la seguridad, solidez y conservación del edificio, entre otras

ninguna de ellas se encuentra el desistimiento voluntario de una reclamación judicial o administrativa.

Debemos mencionar, además, que la Ley Núm. 103 de 25 de abril de 2003, al enmendar la Ley de Propiedad Horizontal, introdujo el siguiente precepto:

> Toda transacción judicial o extrajudicial que exceda de cinco mil (5,000) dólares deberá obtener la aprobación del Consejo de Titulares. En los condominios comerciales o profesionales, el Reglamento podrá fijar otra suma. Art. 38-E de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-4A.

Como es de notar, esta nueva disposición tampoco exige el requisito de unanimidad, aunque se trate de ponerle fin a una reclamación judicial.

Ante este escenario jurídico, no podemos concluir que se requiera unanimidad para desestimar una demanda incoada a nombre del Consejo de Titulares, independientemente de los derechos que se pretendan vindicar mediante dicho trámite judicial. Por tratarse de un requisito excepcional, es preciso limitar los supuestos en que se requiere unanimidad a aquellos casos provistos en la ley.

Una demanda judicial envuelve inexorablemente el desembolso de fondos comunitarios, a veces, en cantidades significativas. No se justifica que un solo titular pueda destinar el uso de dichos fondos a una actividad a la que la mayoría se opone por diversas razones, poniendo

---

actividades. Véase, Godreau, El Condominio, *op cit.*, a las págs. 127-128.

así en riesgo la capacidad de sufragar otros gastos necesarios para el mantenimiento del condominio. Esta consideración adquiere mayor importancia cuando existe la posibilidad de que el conflicto comunitario llegue a su fin por medios extrajudiciales, posibilidad que –para disiparse– dependería del voto de un solo titular. Por consiguiente, resolvemos que la decisión de desistir de un pleito es una determinación que deberá contar con el aval de una <u>mayoría</u> de los titulares. Esto por corresponder a una decisión sobre "asuntos de interés general para la comunidad". 31 L.P.R.A. sec. 1293b(k).

Partiendo de estas consideraciones, determinemos el resultado de su aplicación a los hechos de este caso.

### III

Luego de realizar las investigaciones y advertencias pertinentes, González Rivera, en su capacidad de Presidente de la Junta de Directores, presentó una demanda de *injunction* contra noventa (90) titulares del condominio. La demanda fue presentada a nombre del Consejo de Titulares. El propósito de la demanda era lograr la restitución inmediata y total de la fachada del inmueble que supuestamente había sido alterada por varios cambios efectuados por los demandados en sus apartamentos, en alegada violación a la ley, a la escritura matriz y al reglamento del condominio. Ante estos hechos, podemos presumir que González Rivera tenía

la autoridad para presentar la referida demanda a nombre de los titulares.

Según hemos indicado, no era necesario que González Rivera obtuviera previamente la autorización del Consejo de Titulares, pues se trataba de la interposición de una acción a nombre de éste para hacer valer la ley y para proteger los mejores intereses del condominio. Por lo tanto, entendemos que dicha acción legal fue iniciada conforme lo dispone nuestro ordenamiento jurídico y la jurisprudencia aplicable.

Sin embargo, la controversia de autos no culminó con dicho trámite. Posteriormente, la mayoría del Consejo de Titulares eligió una nueva Junta de Directores. Ésta inició las gestiones para obtener el consentimiento necesario para desistir de la demanda entablada por González Rivera. En su segundo intento, la Junta logró conseguir el aval de la mayoría de los titulares presentes en la asamblea convocada a tales efectos. De esta forma, la autoridad que poseía González Rivera para continuar promoviendo la reclamación judicial quedó desvanecida. Desde ese momento le corresponde a la nueva Junta de Directores hacer valer la voluntad del Consejo de Titulares consistente en desistir de la demanda incoada, sin que para eso se requiera unanimidad entre los condóminos.

Lo resulto en *Consejo de Titulares v. Galerías Ponceñas*, supra, no altera nuestra conclusión. En ese

caso, el titular que figuraba como demandado por el Consejo de Titulares en varias acciones era, precisamente, el dueño de más del cincuenta y un por ciento (51%) de las participaciones en el edificio. Tomando esto en consideración, y en atención al principio de buena fe y a las normas que prohíben el abuso del derecho, resolvimos que no era necesario considerar su participación en los elementos comunes para determinar si se satisfacía el criterio de mayoría para ratificar la presentación de las reclamaciones judiciales. Una conclusión distinta hubiera conllevado reconocerle a un solo titular un poder de veto sobre todo acto del Consejo de Titulares que pudiera ser contrario a sus intereses personales.

En este caso, por el contrario, no existe prueba de mala fe ni de abuso de derecho. Tampoco se nos ha puesto en condición de determinar que los titulares que votaron a favor del desistimiento son los mismos condóminos que figuran como demandados en el pleito iniciado por González Rivera, ni se nos ha presentado prueba de que ellos son, exactamente, quienes constituyeron la mayoría en esa determinación. No se trata, pues, de un solo titular (con mayoría de participaciones) que pretende el desistimiento de la reclamación entablada en su contra, sino de un acto promovido por un conjunto de titulares que constituye la mayoría de los condóminos. Así, en ausencia de prueba en contrario, debemos presumir que la

intención de desistir responde a una decisión tomada de buena fe por una mayoría legítima de los titulares.

Aclarado este extremo, y a la luz del análisis que antecede, concluimos que la nueva Junta de Directores puede solicitar el desistimiento de la demanda instada a nombre del Consejo de Titulares a causa de las alegadas alteraciones de fachada. Dicha gestión no requiere el voto unánime del Consejo de Titulares, siendo suficiente para esos fines el voto afirmativo de una mayoría de los condóminos, como en efecto ocurrió.

No obstante lo anterior, nada impide que, en casos similares, siempre que se satisfagan los criterios jurisdiccionales y de justiciabilidad, cualquier titular afectado pueda incoar una demanda en contra de sus vecinos por las alteraciones a la fachada.

IV

Por los fundamentos expuestos, se revoca la Sentencia del Tribunal de Apelaciones y, en consecuencia, la Resolución del Departamento de Asuntos del Consumidor.

Se dictará Sentencia de conformidad.

FEDERICO HERNÁNDEZ DENTON
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Asuntos del
Consumidor, Región de San Juan

    Agencia–Recurrida

Orlando González Rivera

    Querellante–Recurrido        CC-2004-929    Certiorari

       v.

Junta de Directores Condominio
Sandy Hills

    Querellada–Peticionaria


SENTENCIA


San Juan, Puerto Rico a 27 de noviembre de 2006.


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones y, en consecuencia, la Resolución del Departamento de Asuntos del Consumidor.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo