Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| HADID KIENY PÉREZ<br><br>Demandante-Recurrido<br><br>Vs.<br><br>KEVIN VÁZQUEZ SANTOS; JUNTA DE DIRECTORES DEL CONDOMINIO GRANADA PARK<br><br>Demandado-Peticionario | KLCE202500002 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. GB2022CV00326<br><br>Sala: 507<br><br>Sobre: COBRO DE DINERO ORDINARIO |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de mayo de 2025.

Comparece ante nos la Junta de Directores del Condominio Granada Park (en adelante, parte Peticionaria y/o Junta de Directores) junto al Sr. Kevin Vázquez Santos (en adelante, señor Vázquez Santos) mediante *Certiorari* y nos solicita que revoquemos la *Resolución* emitida el 26 de noviembre de 2024, notificada el 2 de diciembre, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, foro primario y/o TPI).[1] Mediante el referido dictamen, el foro primario declaró No Ha Lugar la *Moción de Desestimación* parcial por falta de jurisdicción sobre la materia, presentada por el señor Vázquez Santos el 25 de septiembre de 2024. A su vez, declaró No Ha Lugar la *Moción de Desestimación* presentada por la parte Peticionaria.

Examinado el recurso de autos, así como la totalidad del expediente ante nuestra consideración, expedimos el auto de

---

[1] Apéndice I del Recurso, págs. 1-5; Entrada 287 SUMAC.

Número Identificador

SEN2025 _____

*Certiorari* y revocamos la *Resolución* recurrida, por los fundamentos que expondremos a continuación.

*-I-*

El 11 de abril de 2024, la Sra. Hadid Kieny Pérez (en adelante, parte Recurrida y/o señora Kieny Pérez) presentó una *Demanda* en contra de la parte Peticionaria y el señor Vázquez Santos.[2] En síntesis, alegó que fue propietaria del apartamento 1L del Condominio de Granada Park desde el año 1984 hasta octubre del año 2019. Además, que debido al paso del huracán María, el apartamento sufrió graves daños, por lo que, solicitó a través de la Junta de Directores una reclamación ante la compañía de seguros Chubb Insurance. Asimismo, sostuvo que el 29 de octubre de 2019 vendió el apartamento al señor Vázquez Santos. Por otro lado, la parte Recurrida, señaló que previo a vender el apartamento aun no le habían entregado el cheque por los daños reclamados. Por su parte, afirmó que debido a lo anterior había acordado por escrito con el señor Vázquez Santos, que tan pronto la Junta de Directores le desembolsara, este le estaría informando y entregando el cheque.

De otro lado, añadió que el 11 de mayo de 2020 la Junta de Directores hizo la entrega al señor Vázquez Santos del cheque de una cantidad de $5,564.03 por conceptos de daños sufridos por el Huracán María. De igual forma, la parte Recurrida alegó que el señor Vázquez Santos nunca le entregó el cheque a pesar del acuerdo que tenían y que el 24 de julio de 2020 le requirió a este devolverlo. Posteriormente, le solicitó por medio de un abogado la devolución del dinero, y que, luego de varias comunicaciones, este, se negó a entregar el referido pago alegando, 8 meses después de haber comprado, que había tenido que hacer reparaciones en el apartamento, por lo que, le estaría entregando una cantidad de

---

[2] Apéndice 2 del Recurso, págs. 9-13; Entrada 1 SUMAC.

$1,700.00 menor a lo pagado por el seguro. De otro lado, afirmó que durante el proceso de compra el señor Vázquez Santos inspeccionó meticulosamente la propiedad junto al ajustador de su banco hipotecario, aceptando la propiedad "as is" y procediendo con la compraventa de la misma.

De igual forma, alegó que el señor Vázquez Santos ha sido negligente al no remitirle el pago, en violación a sus derechos asegurables y al ignorar, y no actuar ante los requerimientos de ésta para recobrar el pago del seguro indebidamente realizado. Añadió que, lo anterior le ha causado daños y perjuicios y angustias mentales que ascienden a $100,000.00.

Acaecidos varios incidentes procesales innecesarios pormenorizar, el 29 de agosto de 2023, la Junta de Directores presentó su *Contestación a la Demanda y Demanda de Co-Parte.*[3] En resumen, señaló que el Consejo de Titulares y su Junta de Directores cumplieron a cabalidad con las disposiciones de la Ley de Condominios sobre la indemnización del seguro comunal. Además, añadió que no participaron en los acuerdos alcanzados en la compraventa del apartamento objeto de la presente causa de acción. Por otro lado, alegó que siendo el acuerdo entre la señora Kieny Pérez y el señor Vázquez Santos, la Junta de Directores no tiene injerencia ni participación en este. Asimismo, insistió que emitió el pago del seguro comunal por los daños del apartamento 1L a quien correspondía el mismo, a su propietario al momento del desembolso, el señor Vázquez Santos. De otra parte, en la *Demanda de Co-Parte,* alegó que, de ser el caso que la Junta de Directores tuviese que resarcir o indemnizar de alguna forma a la parte Recurrida por el pago del seguro comunal, o por daños, perjuicios, angustias mentales, o pérdidas materiales o económicas, el señor Vázquez

---

[3] Apéndice 4 del Recurso, págs. 16-22; Entrada 54 SUMAC.

Santos vendría a su vez obligado a resarcir o devolver todo lo pagado a estos.

Luego, el 8 de enero de 2024, el señor Vázquez Santos presentó su *Contestación a la Demanda Co-Parte.*[4] En resumen, señaló que ha solicitado en un sinnúmero de ocasiones a la parte Recurrida evidencia de las reclamaciones y las reparaciones realizadas y que, en su defecto, esta no ha provisto dicha información. Igualmente, añadió que ha tenido que incurrir en gastos para la reparación del apartamento. Informó que, la parte Recurrida no aduce hecho alguno que requiera la concesión de un remedio debido a que no existe una causa de acción y/o deuda liquida o exigible. Por otra parte, señaló que había acordado con la parte Recurrida que se le descontaría del cheque las reparaciones que hubiesen quedado pendientes. Por lo anterior, solicitó que se declarara No Ha Lugar la *Demanda.*

El 5 de septiembre de 2024, la Junta de Directores presentó una *Moción de Desestimación.*[5] Alegó que, estos no tienen personalidad jurídica y que el Consejo de Titulares y la Junta de Directores son dos órganos separados e independientes conforme a la Ley de Condominios. A su vez, puntualizó que no tienen capacidad para demandar ni ser demandados. Asimismo, señaló que no se pueden someter a la jurisdicción del Tribunal y, por tal razón, cualquier sentencia en el presente caso resultaría inoficiosa. Finalmente, solicitó al foro primario que declare la falta de jurisdicción por la ausencia de personalidad jurídica y legitimación pasiva.

En reacción, el 25 de septiembre de 2024, la parte Recurrida presentó su *Oposición a Moción de Desestimación.*[6] En síntesis,

---

[4] Apéndice 4 del Recurso, págs. 16-22; Entrada 77 SUMAC.
[5] Apéndice 7 del Recurso, págs. 27-29; Entrada 110 SUMAC.
[6] Apéndice 9 del Recurso, págs. 31-38; Entrada 114 SUMAC.

sostuvo que la Junta de Directores renunció a la defensa de falta de jurisdicción por no incluirla en la alegación responsiva. Además, que se activó una presunción de que la Junta de Directores y su presidente actuaron en representación y con la anuencia del Consejo de Titulares. De igual forma, señaló que la Ley de Condominios no impide que la Junta de Directores represente al Consejo de Titulares, presentando alegaciones y defensas para tramitar los casos en su contra, siempre que cuente con autorización. Finalmente, expuso que la solicitud de desestimación carece de fundamento y no procede en derecho.

Así las cosas, el 8 de octubre de 2024, el TPI emitió una *Orden*.[7] En esta, ordenó a la parte Peticionaria a presentar el reglamento vigente para los hechos y las actas donde se aprobó la intervención en el caso de marras para radicar la intervención, en un término de diez (10) días. En reacción, la Junta de Directores presentó una *Moción de Reconsideración de Orden*.[8] Dispuso, que la antedicha *Orden* carece de fundamento legal y debe ser reconsiderada debido a que la Junta de Directores no posee personalidad jurídica propia, conforme a la Ley de Condominios y jurisprudencia aplicable. Por otra parte, añadió que cualquier sentencia que se dicte en contra de estos no sería oponible al Consejo de Titulares, debido a que este último es el único con capacidad legal para representar a la comunidad de propietarios y no es contra quien la parte Peticionaria presentó el pleito. De igual forma, añadió que la parte Peticionaria no demostró la existencia de una autorización expresa. De lo que sigue, el 21 de octubre de 2024, el foro primario declaró No Ha Lugar la *Moción de Reconsideración*

---

[7] Apéndice 10 del Recurso, pág. 39; Entrada 118 SUMAC.
[8] Apéndice 11 del Recurso, págs. 40-45; Entrada 128 SUMAC.

*de Orden.*[9] Así, pues, ordenó a la Junta de Directores a cumplir con la *Orden.*

Por otra parte, el 15 de octubre de 2024, el señor Vázquez Santos presentó una *Moción de Desestimación Parcial* por falta de jurisdicción sobre la materia. Alegó que, por ser una reclamación extracontractual, y la parte Recurrida haber presentado la Demanda un (1) año y dos (2) meses después de haber conocido de la entrega del cheque, el foro primario carece de jurisdicción sobre la materia. Por tal razón, solicitó al foro primario que se desestime parcialmente la causa de acción.

De otro lado, el 21 de noviembre de 2024, la Junta de Directores presentó una *Moción en Cumplimiento de Orden.*[10] Adjuntó una declaración jurada de la Presidenta de la Junta de Directores, donde esta acreditó que a pesar de los esfuerzos para identificar los documentos, no se pudo identificar las actas que acrediten la autorización para la intervención en la presente causa de acción.[11] Además, anejó copia del Reglamento del Condominio.[12] En vista de ello, el 2 de diciembre de 2024, el foro primario emitió una *Resolución.*[13] Resolvió que, debido a que la Junta de Directores presentó una *Reconvención* y que su presidenta ha comparecido, sometiendo escritos ante el tribunal, se activó una presunción de que la Junta de Directores y su presidente actuaban en representación y con la anuencia y el consentimiento del Consejo de Titulares del Condominio. Por lo anterior, declaró No Ha Lugar la *Moción de Desestimación.* Igualmente, referente a la desestimación parcial presentada por el señor Vázquez Santos, determinó que la *Demanda* fue presentada dentro del periodo de un (1) año. Por tal

---

[9] Apéndice 12 del Recurso, pág. 46; Entrada 129 SUMAC.
[10] Apéndice 13 del Recurso, págs. 47-49; Entrada 132 SUMAC.
[11] Anejo 1, Entrada 132 SUMAC.
[12] Anejo 2, Entrada 132 SUMAC.
[13] Apéndice 1 del Recurso, págs. 1-7; Entrada __ SUMAC.

razón, declaró No Ha Lugar la solicitud de desestimación presentada por el señor Vázquez Santos.

Inconforme aún, la Junta de Directores acude ante nos mediante un Recurso de *Certiorari* y esbozó los siguientes señalamientos de error:

> **PRIMER ERROR: El Honorable Tribunal de Primera Instancia concluyó que la Junta de Directores del Condominio Granada Park tiene personalidad jurídica para ser demandada, desconociendo lo dispuesto en la Ley de Condominios 129-2020, que limita dicha capacidad al Consejo de Titulares. Al carecer la Junta de legitimación y personalidad jurídica, el Tribunal debió desestimar la demanda presentada en su contra.**

> **SEGUNDO ERROR: El Honorable Tribunal de Primera Instancia concluyó que la Junta de Directores del Condominio Granada Park actuaba con autorización del Consejo de Titulares al considerar su comparecencia y reconvención como evidencia suficiente para suplir legitimación. Esto contraviene la Ley de Condominios, que reserva exclusivamente al Consejo la capacidad de actuar judicialmente, lo que debió llevar al Tribunal a desestimar la demanda por falta de legitimación.**

Seguido, el 7 de enero de 2025, la parte Peticionaria presentó una *Moción Acreditando Notificación.* Posteriormente, el 16 de enero de 2025, emitimos una *Resolución* y concedimos a la parte Recurrida hasta el 13 de febrero de 2025 para presentar su postura sobre el *Recurso.* Luego, el 27 de febrero de 2025, emitimos una segunda *Resolución* acreditando que la parte Recurrida no presentó su posición y, por tanto, dimos por perfeccionado el presente *Recurso.*

Transcurrido el término reglamentario para la comparecencia de la parte Recurrida, sin haberlo hecho, expedimos el auto de *Ceriorari* y procedemos a resolver.

-*II*-

-*A*-

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *McNeil Healthcare v. Mun. Las Piedras I,* 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). De otra parte, la Regla 52.1

de Procedimiento Civil establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. *Mun. De Caguas v. JRO Construction*, 201 DPR 703, 709 (2019); 32 LPRA Ap. V, R. 52.1. En lo pertinente, la Regla 52.1, *supra*, dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. 32 LPRA Ap. V, R. 52.1.

Es menester destacar que la discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Mun. Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros. *Íd.* Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari. Torres González v. Zaragoza*

*Meléndez, supra; Mun. Caguas v. JRO Construction, supra,* pág. 709; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. V. BBVAPR, supra,* págs. 338-339. La referida regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R.40.

Así, pues, el recurso de *Certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz De León,* 176 DPR 913, 918 (2009). Es por ello que, los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado. *Íd.* Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. V. Arcos Dorados et al., supra; Cruz*

*Flores et al. V. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).

*-B-*

La Regla 10.2 de Procedimiento Civil dispone la parte contra quien se ha instado una reclamación puede presentar una moción de desestimación, en la que alegue cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V R. 10.2; *Trans-Oceanic Life Ins. v. Oracle Corp.,* 184 DPR 689, 701 (2012).

Es hartamente conocido que los Tribunales podemos actuar únicamente en los casos que son justiciables. *Bhatia Gautier v. Gobernador,* 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 931 (2011). Así, pues, las doctrinas que dan vida al principio de justiciabilidad son: **legitimación activa**, academicidad y cuestión política. *Sánchez v. Srio. de Justicia,* 157 DPR 360, 370 (2002). Por su parte, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) **una de las partes carece de legitimación activa**; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Bhatia Gautier v. Gobernador, supra,* págs. 68-69. Si una controversia no es justiciable, quiere decir que el tribunal está impedido de resolverla, por carecer de jurisdicción para ello. Es decir, "[l]a doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la

jurisdicción de los mismos". *Smyth, Puig v. Oriental Bank*, 170 DPR 73, 75 (2007).

Por otro lado, Nuestro Más Alto Foro ha expuesto que los tribunales tenemos siempre la obligación de ser celosos guardianes de nuestra propia jurisdicción, pues sin jurisdicción no estamos autorizados a entrar a resolver los méritos un recurso. *Shell v. Srio. Hacienda*, 187 DPR 109, 122-123 (2012); *Cordero et al. v. A.R.Pe. et al.*, 187 DPR 445, 457 (2012); *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012).

En nuestro ordenamiento jurídico, la jurisdicción es definida como "el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante para las partes." *MCS Advantage, Inc. v. Fossas Blanco y otros*, 211 DPR 135, 144 (2023); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). Por su parte, la jurisdicción sobre la persona es "[e]l poder del tribunal para sujetar a una parte a su decisión". *Trans-Oceanic Life Ins. V. Oracle Group,* 184 DPR 689, 701 (2012)

Puntualizamos que, "[l]as cuestiones de jurisdicción por ser privilegiadas deben ser resueltas con preferencia, y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo". *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 355 (2003). Ante ello, el tribunal debe desestimar la reclamación sin entrar en los méritos del caso. *González Santos v. Bourns P.R., Inc.,* 125 DPR 48, 63 (1989). El Tribunal Supremo de Puerto Rico ha reiterado que la falta de jurisdicción sobre la materia tiene las siguientes consecuencias:  (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber

de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *MCS Advantage, Inc. v. Flosas Blanco y otros,* 211 DPR 135, 145 (2023). "En consecuencia, si un tribunal determina que carece de jurisdicción sobre la materia para atender determinado asunto, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia". *Íd.*, pág. 146.

### -C-

La Ley Núm. 129 de 16 de agosto de 2020, también conocida como "Ley de Condominios de Puerto Rico, según enmendada, 31 LPRA sec. 1921, fue promulgada con el propósito de establecer un régimen jurídico que facilitara la vida en convivencia dentro de un área restringida de viviendas. *Exposición de Motivos*, Ley Núm. 129-2020.  Como parte del funcionamiento ordenado que debe permear en el régimen de propiedad horizontal, es menester señalar que el titular de un apartamento sometido al Régimen de Propiedad Horizontal tiene el derecho al pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. 31 LPRA 1921a.

Ahora bien, el artículo 48 de la precitada ley, destaca la finalidad del Consejo de Titulares. Veamos:

> **El Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. Estará integrado por todos los titulares**. Sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio.
> **El Consejo de Titulares tendrá personalidad jurídica propia** y de sus obligaciones frente a terceros, responderán los titulares de forma subsidiaria y sólo con su apartamento. […]
>
> 31 LPRA sec. 1922t. (Énfasis suplido).

El Consejo de Titulares está definido como "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares". 31 LPRA sec. 1921h. Es decir, el Consejo de Titulares está integrado por todos los titulares y constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal. Este goza de personalidad jurídica y por medio de su existencia hace viable la administración de las áreas comunes del inmueble por todos los titulares. A tenor con lo anterior, la finalidad del Consejo de Titulares consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que protege los intereses de sus miembros; es decir, el de los titulares frente a la comunidad y a terceros. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311,326 (2012).

Con el propósito de dotar al Consejo de Titulares de facultades para realizar su encomienda, **el legislador le otorgó personalidad jurídica propia, separada de sus miembros**. 31 LPRA sec. 1922t. Por tal razón, el Consejo de Titulares "ostenta la capacidad requerida para figurar como parte en un procedimiento judicial". *Hernández Pérez v. Halvorsen*, 176 DPR 344, 362 (2009). Ahora bien, "el hecho de que el Consejo de Titulares posea capacidad jurídica no le faculta para comparecer como demandante o demandado en cualquier procedimiento judicial que involucre a algún titular del condominio o que se relacione de alguna forma con éste". *Íd.*, en la págs. 362-363.

De otro lado, precisa enfatizar la diferencia entre el Consejo de Titulares y la Junta de Directores en un Condominio. El Tribunal Supremo ha establecido que el Consejo de Titulares y la Junta de Directores son organismos distintos. Entre éstos, la personalidad jurídica la ostenta el Consejo de Titulares, no la Junta de Directores. *Consejo de Tit. v. Galerías Ponceñas, Inc.,* 145 DPR 315, 328 (1998).

A su vez, el Alto Foro ha aclarado que, entre ambos, el Consejo de Titulares, es el ente que posee legitimación activa para acudir ante los tribunales. *Íd.* Así, pues, "[l]a responsabilidad fundamental de la Junta de Directores "estriba en velar por el buen funcionamiento del condominio logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, la de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares". M.J.Godreau, *Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directores y del presidente para llevar acciones a nombre del condominio*, 64 (Núm. 3) Rev. Jur. UPR 481, 481 (1995).

De otra parte, la Ley de Propiedad Horizontal delega en la Junta de Directores la responsabilidad fundamental de velar por el buen funcionamiento del condominio para lograr que se ejecuten las disposiciones de la Ley, de la escritura matriz, del reglamento del condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente aprobados por el Consejo de Titulares. 31 LPRA sec. 1393b-4; *Consejo Cond. Plaza del Mar v. Jetter*, 169 DPR 643, 658 (2006). La pieza legislativa, según enmendada, expresamente dispone que el Presidente de la Junta de Directores tiene la responsabilidad de representar al Consejo de Titulares en cualquier acción judicial y en todo asunto que afecte a la comunidad. 31 LPRA sec. 1922z.

Adicionalmente, la Ley Núm. 129-2020, *supra*, expresamente destaca que el Presidente, como representante del Consejo de Titulares, podrá representar en un juicio o en asuntos que afecten a los titulares. En específico, el artículo 54 dictamina los Poderes y deberes del Presidente de la Junta de Directores de la siguiente manera:

**El Presidente representará en juicio y fuera de él a la comunidad en los asuntos que la afecten y presidirá las asambleas del Consejo de Titulares**. Comparecerá a nombre del condominio para otorgar las escrituras y demás documentos en los que el Consejo de Titulares sea parte. El Presidente podrá tener a las personas que entienda necesario para que lo asistan en el proceso de presidir la asamblea.

**Cuando se trate de acciones para hacer cumplir ésta o cualquier otra ley aplicable,** el reglamento del Condominio o los acuerdos del Consejo de Titulares, o cuando el Consejo de Titulares o la Junta de Directores, en representación de éste, deba comparecer en pleito como demandado o querellado, **el Presidente podrá comparecer a nombre de dichos organismos y presentar las acciones y defensas que estime procedentes, seleccionando la representación legal que estime conveniente, <u>previa consulta a la Junta</u>. <u>De las acciones tomadas, deberá notificar a los titulares dentro de los treinta (30) días siguientes.</u>**
[…]

**En todo caso, se presumirá que el Presidente de la Junta de Directores cuenta con la autorización del Consejo de Titulares para comparecer a nombre de éste en los foros pertinentes.**

31 LPRA sec. 1922z. (Énfasis suplido).

Por otra parte, desde el caso *Consejo de Tit. v. Galerías Ponceñas, Inc.,* supra, en la pág. 332, resuelto previo a las enmiendas que introdujo la Ley de Condominios, el Tribunal Supremo concluyó, que el Presidente de la Junta de Directores tiene autoridad para acudir a los tribunales con el fin de lograr el cumplimiento de la Ley de Propiedad Horizontal, sin necesidad de obtener previamente el aval del Consejo de Titulares, siempre que la acción esté relacionada con facultades que le fueron expresamente delegadas por la ley. Es decir, la facultad del Presidente de la Junta de Directores de acudir a los tribunales sin el consentimiento previo del Consejo de Titulares está razonablemente implícita, al menos, en aquellas facultades que la ley le delega de forma expresa. *Íd.* De esta forma, requerirle a un presidente de una Junta de Directores una previa aprobación del Consejo de Titulares para instar un proceso judicial depende del tipo de acción de que se trate. *Íd.,* a la pág. 330, citando a M.J. Godreau, *Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de*

*Directores y del Presidente para llevar acciones a nombre del condominio*, 64 Rev. Jur. 481, 495 (1995).

A tenor de lo anterior, el Tribunal Supremo expresó que en los casos en que la gestión judicial no se realiza como consecuencia del ejercicio de facultades o de deberes impuestos de forma expresa al Presidente o a la Junta de Directores, operará una presunción rebatible a favor del Presidente de la Junta de Directores, en términos de que se encuentra autorizado para acudir a los tribunales en representación del Consejo de Titulares. *Consejo de Tit. v. Galerías Ponceñas*, Inc., supra, a la pág. 331. Sin embargo, nuestro Más Alto Foro ha reiterado que **"esta presunción no derrota la necesidad de que el Presidente o la Junta obtengan el consentimiento del Consejo"**. *Íd* (énfasis suplido).

Finalmente, aunque la gestión administrativa del edificio recae sobre la Junta de Directores, todas sus decisiones están supeditadas a la voluntad del Consejo de Titulares, que constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal. *Íd.*, a la pág. 327.

### -III-

En el Recurso ante nuestra consideración, la parte Peticionaria esbozó dos (2) señalamientos de error que juzga cometió el Foro primario. Sostuvo que erró el Tribunal de Primera Instancia al concluir que la Junta de Directores tiene personalidad jurídica para ser demandada. Además, que erró el Foro primario al determinar que la Junta de Directores actuaba con la autorización del Consejo de Titulares. Le asiste la razón. Veamos.

En este caso, la parte Recurrida instó una *Demanda* en la que incluyó como parte demandada a la Junta de Directores del Condominio, no obstante, no acumuló al Consejo de Titulares. Al la Junta de Directores comparecer en el pleito mediante mociones dispositivas y una *Demanda Co-parte*, el TPI determinó que esta

tenía la autorización del Consejo de Titulares. Así, pues, el Foro primario entendió que existía una presunción que sustentaba lo anterior.

Primeramente, es menester destacar que **el legislador le otorgó personalidad jurídica propia únicamente al Consejo de Titulares.** 31 LPRA sec. 1922t. Por tal razón, es este el ente que "ostenta la capacidad requerida para figurar como parte en un procedimiento judicial". *Hernández Pérez v. Halvorsen,* 176 DPR 344, 362 (2009). Justipreciamos que es el Consejo de Titulares quien debió ser traído como parte en la presente causa de acción, pues es el ente que ostenta personalidad jurídica para comparecer en el litigio, pues es el organismo central del régimen de propiedad horizontal. Precisa destacar que, la personalidad jurídica la ostenta el Consejo de Titulares, no la Junta de Directores. *Consejo de Tit. v. Galerías Ponceñas, Inc.,* supra, en la pág. 328. A su vez, el Tribunal Supremo ha aclarado que, entre ambos, el Consejo de Titulares, es el ente que posee legitimación activa para acudir ante los tribunales. *Íd.*

De otro lado, no obstante, el Tribunal Supremo ha determinado que el Presidente de la Junta de Directores tiene autoridad para acudir a los tribunales, sin necesidad de obtener previamente el aval del Consejo de Titulares, siempre que la acción esté relacionada con facultades que le fueron expresamente delegadas por la ley. Lo cierto es que en el caso ante nos, el Presidente de la Junta de Directores no fue traído como parte. Así, pues, la parte Recurrida únicamente incluyó a la Junta de Directores como parte demandada. Es menester destacar que a pesar de que la Ley Núm. 129-2020, autoriza al Presidente de la Junta de Directores a comparecer en representación del Consejo, ello no implica que se deba dejar de acumular al Consejo de Titulares como parte indispensable.

Aun tomando como cierto que se haya traído a la Presidenta de la Junta de Directores al pleito, referente a la presunción que señala el Tribunal de Primera Instancia, nuestro Más Alto Foro ha determinado que dicha presunción **"no derrota la necesidad de que el Presidente o la Junta obtengan el consentimiento del Consejo".** *Consejo de Tit. v. Galerías Ponceñas*, Inc., supra, a la pág. 331. Además, la facultad del Presidente de la Junta de Directores de acudir a los tribunales sin el consentimiento previo del Consejo de Titulares está razonablemente implícita, al menos, en aquellas facultades que la ley le delega de forma expresa. *Consejo de Tit. v. Galerías Ponceñas, Inc.*, supra, a la pág. 332. Es decir, dicha autorización no está expresamente otorgada en las facultades que la Ley otorga al Presidente de la Junta de Directores.

A tales efectos, coincidimos con la parte Peticionaria en que no se activó la presunción que señaló el TPI, pues no hay prueba de que la Junta de Directores haya actuado en representación y con la anuencia del Consejo de Titulares. Enfatizamos que, según expuesto anteriormente, la Junta de Directores adjuntó una declaración jurada de la Presidenta de la Junta, donde esta acreditó que a pesar de los esfuerzos para identificar los documentos, no pudo identificar las actas que acrediten la autorización para la intervención en la presente causa de acción.[14] Por tanto, resolvemos que la Junta de Directores no logró probar al Tribunal que contaba con el consentimiento expreso del Consejo de Titulares para comparecer en este pleito y, por tal razón, carece de legitimación activa para ello.

Es hartamente conocido que los Tribunales podemos actuar únicamente los casos que son justiciables. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011). Así, pues, las doctrinas que dan

---

[14] Anejo 1, Entrada 132 SUMAC.

vida al principio de justiciabilidad son: **legitimación activa**, academicidad y cuestión política. *Sánchez v. Srio. de Justicia*, 157 DPR 360, 370 (2002). Por su parte, una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) **una de las partes carece de legitimación activa**; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Bhatia Gautier v. Gobernador, supra*, págs. 68-69. En tales casos, cuando una controversia no es justiciable, estamos impedidos de entrar en méritos sobre ella, por carecer de jurisdicción para ello. "En consecuencia, si un tribunal determina que carece de jurisdicción sobre la materia para atender determinado asunto, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia". *MCS Advantage, Inc. v. Flosas Blanco y otros,* supra, en la pág. 145. Al la Junta de Directores carecer de legitimación activa para comparecer en este pleito, el caso no es justiciable y, por tanto, el foro primario actuó sin jurisdicción. Ante la ausencia de jurisdicción, lo que procede es la desestimación del presente caso. Por todo lo anterior, se cometieron los dos errores esbozados.

### -*IV*-

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de este dictamen, expedimos el recurso de *Certiorari*, revocamos la *Resolución* recurrida y decretamos la desestimación parcial, sin perjuicio, de la *Demanda* en contra de la Junta de Directores del Condominio Granada Park.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones